SCHULER *v.* ISRAEL and another. (Consolidated Cases.)[1]

(*Circuit Court, E. D. Missouri.* June 22, 1886.)

1. JUDGMENTS—NOTES.

Where judgment is recovered on a note, it is merged and extinguished, and a second judgment cannot be recovered thereon against the same party, in another district.

2. CHECKS—DECREE AGAINST BANK.

The drawer of a dishonored check is not entitled to be credited with the amount of an unpaid decree recovered by the payee against the drawee.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—SALES ON CREDIT.

A general assignment for the benefit of creditors, directing the assignee to dispose of the property conveyed with all reasonable diligence, "by public or private sale, for the best price that can be obtained, and convert the same into money," *held,* not to authorize sales on credit.

4. SAME—CONFLICT OF LAWS.

An assignment valid where executed, is valid in other states, if not in conflict with the rights of creditors residing therein.[2]

At Law. Consolidated cases.

Suits on check drawn and note made by J. N. Israel in the name of C. W. Israel & Co. Demurrers to answers of Israel and the Laclede Bank, garnishee.

The facts, as they appear from the pleadings, are substantially as follows: At the time of the transactions here involved, J. N. Israel

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

[2] See note at end of case.

did a banking business at Hamilton, Texas, under the name of C. W. Israel & Co., and at Harold and Wichita Falls, Texas, under the name of the Exchange Bank. Each of his three banks had a separate account with the Laclede Bank of St. Louis, Missouri. On October 20, 1885, the amounts held by the Laclede Bank to the credit of Israel's banks were, respectively, as follows: To the credit of C. W. Israel & Co., $12,412.41; to the credit of Exchange Bank of Harold, $1,927.53; to the credit of the Exchange Bank of Wichita Falls, $10,013.15. On that day the check in suit was drawn on the Laclede Bank, in favor of the plaintiff, for $11,250. On October 24, 1885, Israel & Co., being insolvent, made a general assignment, which provided, among other things, that the assignee therein named should, "with all reasonable diligence, dispose of said property herein conveyed, by public or private sale, for the best price that can be obtained, and convert the same into money;" and that "it is understood that this assignment is made for the benefit of only such creditors of the said C. W. Israel & Co. as will and do consent to accept their proportional shares of said estate, and discharge said C. W. Israel & Co." On the same day C. W. Israel & Co. telegraphed the Laclede Bank as follows: "We assigned this day in favor of S. Davidson. Hold funds subject to his order." The Laclede Bank held a note executed in the name of C. W. Israel & Co., for $6,500, which matured October 26, 1885. When it fell due it was charged up to C. W. Israel & Co.'s account, leaving a balance to the credit of Israel & Co. of $5,912.41. The check above mentioned was not presented for payment until October 26, 1885, after the bank had debited Israel & Co.'s account with the $6,500 note, and was refused payment because of lack of funds. The accounts of J. N. Israel's other two banks remained unaltered at the time the check was presented. The defense of J. N. Israel as to the note in suit is that, before the commencement of this suit, suit had been brought on said note in the United States circuit court of Texas, and that judgment has been recovered thereon in that suit, and said note merged in the judgment, and extinguished. He acknowledges the execution of the check, but claims that inasmuch as in the suit in equity on said check, by the present plaintiff against the Laclede Bank, in this court, said plaintiff recovered a decree against the bank for $5,912.41, said sum should be credited on the check. It appears, however, that nothing has been collected on said decree. The plaintiff is a resident of Kansas.

*Dyer, Lee & Ellis,* for plaintiff.

*Boyle, Adams & McKeighan,* for defendants.

BREWER, J. As counsel desire a speedy decision, that judgment may be entered the present term, and the cases taken, together with the equity cases heretofore decided by me, *(Schuler v. Laclede Bank,* 27 Fed. Rep. 424,) together to the supreme court, I simply state my conclusions:

1. Judgment having been rendered in the United States circuit court for the Eastern district of Texas on the note sued on, no judgment can be entered here upon the same cause of action. Freem. Judgm. § 221, and cases cited.

2. No objection being raised, personal judgment will go on the check.

3. The assignment is valid under the laws of Texas. Unlike the assignment in the case of *Muller* v. *Norton*, 19 Fed. Rep. 719, this does not authorize sales on credit. It directs the assignee to dispose of the property with all reasonable diligence, and to convert the same into money.

4. Valid in Texas, where it was executed, it must be considered valid here, save as it conflicts with the rights of resident creditors. Burrill, Assignm. (3d Ed.) § 310, and cases cited.

Judgment will therefore go in favor of plaintiff against Israel for amount of check and interest, and the Laclede Bank will be discharged, with costs, and allowance as stipulated.

## NOTE.

In the recent case. In re Waite, (N. Y.) 2 N. E. Rep. 440, the New York Court of Appeals laid down the following rules as to the *status* of foreign assignees in bankruptcy in the courts of this country: (1) The statutes of foreign states can in no case have any force or effect *ex proprio vigore*, and hence the statutory title of foreign assignees in bankruptcy can have no recognition here solely by virtue of the foreign statute. (2) But the comity of nations allows a certain effect here to titles derived under, and powers created by, the laws of other countries, and from such comity the titles of foreign statutory assignees are recognized and enforced here, when they can be without injustice to our own citizens, and without prejudice to the rights of creditors pursuing their remedies here under our statutes: provided, also, that such titles are not in conflict with the laws or the public policy of our state. (3) Such foreign assignee can appear, and, subject to the conditions above mentioned, maintain suits in our courts against debtors of the bankrupt whom they represent, and against others who have interfered with or withheld the property of the bankrupt.

A voluntary general assignment for the benefit of creditors, made in another state, and valid by its laws, will be recognized as valid and as effectually transferring personal property wherever the same may be situated. In re Page-Sexsmith Lumber Co., (Minn.) 16 N. W. Rep. 700: Butler v. Wendell, (Mich.) 23 N. W. Rep. 460. But see Richardson v. Rogers, (Mich.) 8 N. W. Rep. 526.

An assignment of personal property and choses in action by an insolvent debtor for the benefit of creditors in conformity with the laws of New York, where such debtor resided and did business, operates to transfer the right of action to recover said choses in action to the assignee, and he may maintain an action, as such assignee, in the courts of this state, to collect the same, in the absence of any set-off or other defense to such action, or of any lien or charge against such claim. Fuller v. Steiglitz, 27 Ohio St. 355.

A general assignment for the benefit of creditors, made in another state, is valid in Maine, so far as to protect the assigned real estate situated in Maine from attachment by a non-resident creditor who has assented to the assignment, and received a part of the benefits thereby secured to him. Chafee v. Fourth Nat. Bank of N. Y., 71 Me. 514.

In Faulkner v. Hyman, (Mass.) 6 N. E. Rep. 849. it is said that an assignment for the benefit of creditors, executed by a citizen of New York to another citizen of that state, and which includes certain property situated in Massachusetts will not be enforced by the courts of that commonwealth, to affect the rights of parties resident there, who have not assented to the assignment, and who have made an attachment of the property here situate subsequent to the assignment in New York.

A deed of assignment between residents of another state, valid according to the laws of the state where executed, is valid as to personal property in Kentucky. J. M. Atherton Co. v. Ives, 20 Fed. Rep. 894.