VAN WYCK *v.* READ *et al.*

*(Circuit Court, N. D. Florida.* August, 1890.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—LEX LOCI.
   An assignment for the benefit of creditors, made by one citizen of New York to another, and valid under the laws of that state, will pass title to a note and mortgage on land in Florida.

2. SAME—PREFERENCES—RELATIVES.
   The fact that an assignor who is justly indebted to his wife and children makes them preferred creditors will not invalidate the assignment.

In Equity. Bill to foreclose mortgage.

*Joseph R. Parrott,* for complainant.

*H. W. Cockrell & Son,* for defendants.

SPEER, J. The controversy before the court has arisen on the following statement of facts: John H. Boynton, a citizen of the state of New York, was engaged in the lumber business, and made advancements to J. C. Read, of this district, taking therefor his note for $4,000, dated June 23, 1879, payable at the office of John H. Boynton in New York, and due two years after date. To secure this note, on the 23d day of June, 1879, Joseph C. Read and Mima A. Read, his wife, executed their mortgage upon a tract of land on Amelia island, in the county of Nassau, and the buildings thereon, known as the "Amelia Steam Saw-Mill of Fernandina, Florida." The note and mortgage are of even date, and the mortgage was recorded June 27, 1879. Thereafter, to-wit, on the 18th of August, 1884, John H. Boynton, having become insolvent, executed an assignment, general in its purpose, but with certain references to favored creditors, to Samuel Van Wyck, with instruction and power to convert all of his assets so assigned into cash, and to pay, among others, the following preferred debts: To Louisa B. Boynton, $26,808.05; to Theodosia Boynton, $20,356.81; to Isabel D. Boynton, $1,080; to Frederick C. Boynton, $5,536. After these and other preferred creditors were paid, the residue was appropriated to pay the remainder of the assignor's debts and liabilities. This assignment was recorded on the 28th of August, 1884, as appears from an exemplification from the record put in evidence, and the note and mortgage before described passed to the said Van Wyck by virtue of said assignment, the note bearing also the following indorsement: "Pay Saml. Van Wyck, assignee, or order," signed "JOHN H. BOYNTON." Among other creditors of John H. Boynton were Dexter Hunter, J. H. Prescott, Lettie Miller, and Wilson and Hunting, residents of this district, who held claims for different amounts. On the 24th and 25th of August, 1884, they sued out attachments, and had process of garnishment issued thereon, serving the same on Joseph C. Read and Mima A. Read, the debtors of Boynton, before mentioned, as evidenced by the note and mortgage before described. These proceedings went regularly to judgment in the state courts, and Joseph C. Read has been left until now in the possession of the mortgaged premises.

The bill is filed by Van Wyck, the assignee, to enforce the foreclosure of the mortgage, and to assert the superiority of his claims as assignee of the note and mortgage to the claims of the general creditors who have obtained judgments in attachments. The judgment creditors by way of defense insist that the assignment to Van Wyck was never executed, as set out in the bill; that after the date of its alleged execution Boynton, the assignor, remained in control of the property assigned, which they insist is a badge of fraud; that the assignment is illegal, null, and void, and not in compliance with the laws of the state of New York; and that the original bill is not prosecuted in the interest of the plaintiff, but in the interest of Daniel G. Ambler. These defenses are set up by way of cross-bill, and the defendants pray that they may be subrogated to the rights of Boynton, and that the proceeds of the note and mortgage be appropriated to pay off and discharge the liens of their judgments of attachments.

The plaintiff proved by the depositions of Frederick C. Boynton, Theodosia Boynton, Isabel Boynton, and John H. Boynton himself the nature of the debts to secure which the preferences in the assignment were made. It appears that Frederick C. Boynton was the son of John H. Boynton; that he was his father's clerk, and had an unpaid account for salary for about $1,000. He loaned his father a produce exchange ticket in 1883, but the evidence is wholly silent as to the value of such loan. He had made no loan to his father other than the undrawn salary. He maintained no separate establishment from his father, has lived with his father all the while, and it is impossible for him to estimate how much has been expended by his father in his maintenance since 1876. John H. Boynton testifies to the claim of Mrs. S. B. Boynton, his mother. She loaned him money and bonds to the amount of $27,000. The claim of Theodosia Boynton he testifies was $10,000 in cash from the sale of her house in Forty-Ninth street, and $10,000 in Houston & Texas bonds. All of this belonged to her. The claim of Isabella D. Boynton was for railroad bonds which he had borrowed from her to use as collateral. He corroborates the statement of Frederick C. Boynton as to his claims. His mother, he states, received her money from his father's estate, his wife from her father's estate, Isabella's was the accumulation of birthday gifts, her mother giving her $100 on each birthday. In that way she accumulated what she had. She had passed 17 birthdays. She loaned her father a St. Paul, Minneapolis & Omaha bond for $1,000. She has no separate establishment from her father's, and has always been maintained by him; is unable to say what has been disbursed in her maintenance. Mrs. Theodosia Boynton testifies that she gave her husband money and securities at different dates. Whenever her income came in she gave it to him. She also gave him the proceeds of her house on Forty-Ninth street.

The plaintiffs in the cross-bill have not furnished any evidence which is sufficient to meet or avoid the testimony of the witnesses for the complainant in the original bill as to the validity of the debts to prefer which the assignment was made. While it is true that several of the benefi-

ciaries of this assignment were relatives of the assignor, a circumstance always important to be considered in cases of this character, the testimony is plain, uncontradicted, and positive that the husband and father was indebted to the wife and children.

The only question then remaining depends for its decision upon the validity of the assignment. It is in our opinion valid by the law of New York, and a contract valid at the place where it is entered into is, as a general rule, valid in all other places, and this rule extends to all assignments of property. It is besides a general rule, with few exceptions, that in construing contracts made in another state the decision is to be governed by the *lex loci* as to the rights acquired and the obligations created. *Railroad Co.* v. *Glenn*, 28 Md. 287 ; *Guillander* v. *Howell*, 35 N. Y. 657 ; *Moore* v. *Willett*, 35 Barb. 663 ; *Hanford* v. *Paine*, 32 Vt. 442. The property transferred by this assignment was the mortgage now sought to be foreclosed, and the transfer was made in New York between residents of that state. This question has been decided favorably to the complainant in *Bacon* v. *Horne*, by the supreme court of Pennsylvania, reported in 16 Atl. Rep. 794. The case seems precisely in point. It was held that an assignment for creditors made in New York in conformity with the laws of that state passes the title to property in Pennsylvania as between residents of New York, although the assignment has never been recorded in Pennsylvania in accordance with the Pennsylvania laws. The ample notes to this case by Mr. Desty throw much light on the subject, but furnish nothing to change the rule above stated. The power of a state to regulate the transfer of all property in its territory with certain exceptions is well established. Story, Confl. Laws, par. 390, *Green* v. *Van Buskirk*, 7 Wall. 139. In the case at bar the proceeding of garnishment was not had until August 24 and 25, and in November and December, 1884. The assignment was made on the 18th of August, 1884, was recorded in New York the same day, and was recorded in Florida on August 18th. It does not appear that this record was necessary. A mortgagee of land in Florida has no legal estate in the land. *McMahon* v. *Russell*, 17 Fla. 698. The mortgage was merely a security for the payment of the note, and the transfer of the note carried the mortgage with it.

The controversy depends, we have seen, on the validity of its transfer with the note by the assignment. The *situs* of the property transferred was in New York, and at the time of the first attachment Boynton had parted with his entire interest in it. Assuming the assignment to be valid, on its execution and delivery the maker of the note and mortgage became indebted to the assignee, and no longer had the assignor anything subject to attachment. The assignment with preferences appears to be likewise valid in Florida. *Holbrook* v. *Allen*, 4 Fla. 87.

The assignments of fraud made in the several cross-bills are not sustained by the proof, and the complainants in the original bill negative their charges. There are, it is true, four judgments in attachment, all post-dating the assignment, all obtained on proceedings taken subsequent to its execution. The right of Van Wyck or his transferee, if it has been

transferred, to foreclose in accordance with the prayer of the bill, will be allowed, and a decree, with costs, so entered. In view of the general appearance of the case, the court will direct that the costs be paid by Van Wyck.