# BARNETT *v.* KINNEY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF IDAHO.

No. 415. Submitted January 9, 1893. — Decided February 6, 1893.

An assignment of all his property, made for the benefit of his creditors with preferences, by a citizen of Utah to another citizen of Utah, which is valid by the laws of Utah and valid at the common law, is valid in Idaho against an attaching creditor, as to property in Idaho of

which the assignee has taken possession, notwithstanding the provision in the Revised Statutes of Idaho that no assignment by an insolvent debtor otherwise than as therein provided is binding on creditors, and that creditors must share *pro rata*, without priority or preference.

THIS was an action of replevin commenced in the District Court of Alturas County, Territory of Idaho, on December 12, 1887, by Josiah Barnett against P. H. Kinney to recover the possession of certain goods and chattels mentioned in the complaint and for damages and costs. The case was submitted to the court for trial, a jury having been expressly waived, upon an agreed statement of facts, and the court made its findings of fact as follows: That on November 23, 1887, M. H. Lipman was a citizen of the United States and of the Territory of Utah, residing and doing business at Salt Lake City, and was possessed and the owner of real and personal property in Utah, and of certain personal property at Hailey, in Alturas County, Idaho; and that he was indebted to divers persons, (none of whom were then, or at the time of trial, citizens, residents and inhabitants of Idaho,) and was insolvent, and on that day duly made, executed and delivered to Barnett, as his assignee, a deed of assignment in writing, which was accepted by Barnett, who assumed the execution thereof; that by the assignment, Lipman sold, transferred, assigned and delivered to Barnett all his property, real and personal, wherever found, in trust, to take possession and convert the same into cash, and pay the necessary expenses, and then his creditors, according to certain classes named in the assignment, preferences being made thereby in favor of certain creditors, as against others, all being designated by classes; that on November 25, 1887, Barnett, as assignee, took actual possession of the personal property situated in Idaho, and on November 26, and before the property was taken by Kinney, filed the assignment for record in the proper office in Alturas County; and that Kinney had actual knowledge and notice in the premises. It was further found that the assignment "was and is valid by the laws of the Territory of Utah;" that Lipman was indebted to the St. Paul Knitting Works, a corporation organized and

existing under the laws of the State of Minnesota, the liability having been incurred by him as a citizen, resident and inhabitant of Utah, and in the transaction of his business there; that on November 26, 1887, and while Barnett was in actual possession, Kinney, who was sheriff of Alturas County, under a writ of attachment in favor of that corporation and against Lipman, took possession of the property; and that thereupon this action of replevin was commenced and the possession of the property delivered to Barnett, who had sold the same and retained the proceeds subject to the final disposition of the action. It was further found that prior to the taking of the property from Barnett by Kinney under the writ of attachment and after the assignment had been recorded, Kinney, as sheriff, had taken it from Barnett's possession under a writ of attachment issued at the suit of a firm located in Nebraska against Lipman, and it had been retaken from Kinney in an action of claim and delivery brought by Barnett against him, which action was still pending. It was also found that the goods had been shipped from Lipman's store in Utah in September, 1887, to Alturas County, and that Lipman from September, 1887, up to the time of making the assignment, had been doing business in Idaho in the running of a branch store at Hailey, in Alturas County; and that at the time of bringing this action defendant was wrongfully detaining the property from the possession of plaintiff.

The court found as conclusions of law that the assignment, a copy of which was annexed to the finding of facts, was a good and valid instrument, and conveyed title to the property in question; and that the plaintiff at the time of bringing the action and the trial was entitled to the possession of the property, and to judgment therefor, and for nominal damages and costs. Judgment having been entered, an appeal was prosecuted to the Supreme Court of the Territory, by which it was reversed, and the cause remanded to the District Court with instructions to enter judgment for the defendant. The record shows that the case had been tried in the District Court before the then Chief Justice of the Territory, and that a change had taken place in that office

when the hearing was had on appeal. Of the three members composing the Supreme Court, one was for reversal and another for affirmance, while the Chief Justice had been of counsel between the same parties in a case in the same District Court, but "with a different attaching creditor," and ·he stated that he had not participated in the discussion of the case, but, his associates having reached opposite conclusions, the disagreeable duty rested upon him "of breaking the dead-lock," which he did by concurring in the opinion for reversal. The majority opinion is to be found in 23 Pac. Rep. 922, and the dissent in 24 Pac. Rep. 624. The case was brought by appeal to this court.

*Mr. Attorney General Miller* and *Mr. C. S. Varian* for appellant.

*Mr. William Stone Abert* and *Mr. John W. Warner* for appellee.

The assignment, being in direct conflict with the Revised Statutes of Idaho, which prohibit preferences, (§ 5898,) was inoperative to pass title to property in that Territory. *Warner* v. *Jaffray,* 96 N. Y. 248; *Brown* v. *Smart,* 69 Maryland, 320, 329 ; *Ex parte Dickinson,* 29 So. Car. 453, 461; *Mason* v. *Stricker,* 37 Georgia, 262; *Paine* v. *Lester,* 44 Connecticut, 196; *Pierce* v. *O'Brien,* 129 Mass. 314; *Zipcey* v. *Thompson,* 1 Gray, 243; *Moore* v. *Church,* 70 Iowa, 208. The power of a State or Territory to pass such laws relating to insolvents is settled, *(Pullman Car Co.* v. *Pennsylvania,* 141 U. S. 18,) and the principle is well settled that where the *lex loci contractus* and the *lex fori* come into collision as to conflicting rights, the comity of nations must yield to the law of the land. *Walworth* v. *Harris,* 129 U. S. 355; *Hervey* v. *Rhode Island Locomotive Works,* 93 U. S. 664; *Milne* v. *Moreton,* 6 Binney, 353; *S. C.* 6 Am. Dec. 466; *Green* v. *Van Buskirk,* 5 Wall. 307; 7 Wall. 139.

The resident insolvent, under the law of Idaho, is not permitted to prefer any creditor in Idaho over any non-resident

creditor, and it would be unjust to concede the contention of the assignee, that a non-resident insolvent, doing business in Idaho, can make an assignment, giving preferences to non-residents over residents of the place where he carries on business, and where his property is also situated.

There can be no distinction in administering the law, and no preference can be given or right denied to the citizen of one State over the citizen of another State or Territory of the United States. *Green* v. *Van Buskirk*, 7 Wall. 139; *Brown* v. *Smart*, 69 Maryland, 327; *Hibernia Bank* v. *Lacombe*, 84 N. Y. 367, 385; *Paine* v. *Lester*, 44 Connecticut, 197; *Ex parte Dickinson*, 29 So. Car. 462.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Supreme Court of the Territory held that a non-resident could not make an assignment, with preferences, of personal property situated in Idaho, that would be valid as against a non-resident attaching creditor, the latter being entitled to the same rights as a citizen of Idaho; that the recognition by one State of the laws of another State governing the transfer of property rested on the principle of comity, which always yielded when the policy of the State where the property was located had prescribed a different rule of transfer from that of the domicil of the owner; that this assignment was contrary to the statutes and the settled policy of Idaho, in that it provided for preferences; that the fact that the assignee had taken and was in possession of the property could not affect the result; and that the distinction between a voluntary and an involuntary assignment was entitled to no consideration.

Undoubtedly there is some conflict of authority on the question as to how far the transfer of personal property by assignment or sale, lawfully made in the country of the domicil of the owner, will be held to be valid in the courts of another country, where the property is situated and a different local rule prevails.

We had occasion to consider this subject somewhat in *Cole*

*v. Cunningham*, 133 U. S. 107, 129, and it was there said: "Great contrariety of state decision exists upon this general topic, and it may be fairly stated that, as between citizens of the state of the forum, and the assignee appointed under the laws of another state, the claim of the former will be held superior to that of the latter by the courts of the former; while, as between the assignee and citizens of his own state and the state of the debtor, the laws of such state will ordinarily be applied in the state of the litigation, unless forbidden by, or inconsistent with, the laws or policy of the latter. Again, although, in some of the states, the fact that the assignee claims under a decree of a court or by virtue of the law of the state of the domicil of the debtor and the attaching creditor, and not under a conveyance by the insolvent, is regarded as immaterial, yet, in most, the distinction between involuntary transfers of property, such as work by operation of law, as foreign bankrupt and insolvent laws, and a voluntary conveyance, is recognized. The reason for the distinction is that a voluntary transfer, if valid where made, ought generally to be valid everywhere, being the exercise of the personal right of the owner to dispose of his own, while an assignment by operation of law has no legal operation out of the state in which the law was passed. This is a reason which applies to citizens of the actual *situs* of the property when that is elsewhere than at the domicil of the insolvent, and the controversy has chiefly been as to whether property so situated can pass even by a voluntary conveyance."

We have here a voluntary transfer of his property by a citizen of Utah for the payment of his debts, with preferences, which transfer was valid in Utah, where made, and was consummated by the delivery of the property in Idaho, where it was situated, and then taken on an attachment in favor of a creditor not a resident or citizen of Idaho. Was there anything in the statutes or established policy of Idaho invalidating such transfer?

Title XII of Part Second of the Revised Statutes of the Territory of Idaho, entitled "Of proceedings in insolvency," (Rev. Stats. Idaho, §§ 5875 to 5932,) provided that "no assign-

ment of any insolvent debtor, otherwise than as provided in
this title, is legal or binding on creditors;" that creditors should
share *pro rata*, "without priority or preference whatever;" for
the discharge of the insolvent debtor upon compliance with
the provisions of the title, by application for such discharge by
petition to the District Court of the county in which he had
resided for six months next preceding, with schedule and in-
ventory annexed, giving a true statement of debts and liabilities
and a description of all the insolvent's estate, including his
homestead, if any, and all property exempt by law from execu-
tion. The act applied to corporations and partnerships, and
declared that if the partners resided in different counties, that
court in which the petition was first filed should retain jurisdic-
tion over the case. Nothing is clearer from its various pro-
visions than that the statute had reference only to domestic
insolvents. As pointed out by Judge Berry in his dissenting
opinion, the first section of the fifty-eight upon this subject, in
providing that "every insolvent debtor may, upon compliance
with the provisions of this title, be discharged from his debts
and liabilities," demonstrates this. The legislature of Idaho
certainly did not attempt to discharge citizens of other juris-
dictions from their liabilities, nor intend that personal prop-
erty in Idaho, belonging to citizens of other States or Territo-
ries, could not be applied to the payment of their debts unless
they acquired a six months' residence in some county of Idaho,
and went through its insolvency court.

The instrument in controversy did not purport to be exe-
cuted under any statute, but was an ordinary common law
assignment with preferences, and as such was not, in itself
illegal. *Jewell* v. *Knight*, 123 U. S. 426, 434. And it was
found as a fact that it was valid under the laws of Utah.
While the statute of Idaho prescribed *pro rata* distribution
without preference, in assignments under the statute, it did
not otherwise deal with the disposition of his property by a
debtor nor prohibit preferences between non-resident debtors
and creditors through an assignment valid by the laws of the
debtor's domicil. No just rule required the courts of Idaho,
at the instance of a citizen of another state, to adjudge a trans-

fer, valid at common law and by the law of the place where it was made, to be invalid, because preferring creditors elsewhere, and, therefore, in contravention of the Idaho statute and the public policy therein indicated in respect of its own citizens, proceeding thereunder. The law of the *situs* was not incompatible with the law of the domicil.

In *Halsted* v. *Straus*, 32 Fed. Rep. 279, 280, which was an action in New Jersey involving an attachment there by a New York creditor as against the voluntary assignee of a New York firm, the property in dispute being an indebtedness of one Straus, a resident of New Jersey, to the firm, Mr. Justice Bradley remarked: "It is true that the statute of New Jersey declares that assignments in trust for the benefit of creditors shall be for their equal benefit, in proportion to their several demands, and that all preferences shall be deemed fraudulent and void. But this law applies only to New Jersey assignments, and not to those made in other States, which affect property or creditors in New Jersey. It has been distinctly held by the courts of New Jersey that a voluntary assignment made by a non-resident debtor, which is valid by the law of the place where made, cannot be impeached in New Jersey, with regard to property situated there, by non-resident debtors. *Bentley* v. *Whittemore*, 4 C. E. Green, (19 N. J. Eq.) 462; *Moore* v. *Bonnell*, 2 Vroom (31 N. J. Law,) 90. The execution of foreign assignments in New Jersey will be enforced by its courts as a matter of comity, except when it would injure its own citizens; then it will not. If Deering, Milliken & Co. were a New Jersey firm they could successfully resist the execution of the assignment in this case. But they are not; they are a New York firm. New York is their business residence and domicil. The mere fact that one of the partners resides in New Jersey cannot alter the case. The New Jersey courts, in carrying out the policy of its statute for the protection of its citizens, by refusing to carry into effect a valid foreign assignment, will be governed by reasonable rules of general jurisprudence; and it seems to me that to refuse validity to the assignment in the present case, would be unreasonable and uncalled for."

In *May* v. *First National Bank*, 122 Illinois, 551, 556, the Supreme Court of Illinois held that the provision in the statute of that State prohibiting all preferences in assignments by debtors applied only to those made in the State, and not to those made in other States; that the statute concerned only domestic assignments and domestic creditors; and the court, in reference to the contention that, if not against the terms, the assignment was against the policy of the statute, said: " An assignment giving preferences, though made without the State, might, as against creditors residing in this State, with some reason, be claimed to be invalid, as being against the policy of the statute in respect of domestic creditors — that it was the policy of the law that there should be an equal distribution in respect to them. But as the statute has no application to assignments made without the State, we cannot see that there is any policy of the law which can be said to exist with respect to such assignments, or with respect to foreign creditors, and why non-residents are not left free to execute voluntary assignments, with or without preferences, among foreign creditors, as they may see fit, so long as domestic creditors are not affected thereby, without objection lying to such assignments that they are against the policy of our law. The statute was not made for the regulation of foreign assignments, or for the distribution, under such assignments, of a debtor's property among foreign creditors."

In *Frank* v. *Bobbitt*, 155 Mass. 112, a voluntary assignment made in North Carolina and valid there, was held valid and enforced in Massachusetts as against a subsequent attaching creditor of the assignors, resident in still another State, and not a party to the assignment. The Supreme Judicial Court observed that the assignment was a voluntary and not a statutory one; that the attaching creditors were not resident in Massachusetts; that at common law in that State an assignment for the benefit of creditors which created preferences was not void for that reason; and that there was no statute which rendered invalid such an assignment when made by parties living in another State, and affecting property in Massachusetts, citing *Train* v. *Kendall*, 137 Mass. 366.

Referring to the general rule that a contract, valid by the law of the place where made, would be regarded as valid elsewhere, and stating that "it is not necessary to inquire whether this rule rests on the comity which prevails between different states and countries, or is a recognition of the general right which every one has to dispose of his property or to contract concerning it as he chooses," the court said that the only qualification annexed to voluntary assignments made by debtors living in another State had been "that this court would not sustain them if to do so would be prejudicial to the interests of our own citizens or opposed to public policy." And added: "As to the claim of the plaintiffs that they should stand as well as if they were citizens of this State, it may be said, in the first place, that the qualification attached to foreign assignments is in favor of our own citizens as such, and in the next place, that the assignment being valid by the law of the place where it was made, and not adverse to the interests of our citizens nor opposed to public policy, no cause appears for pronouncing it invalid." And see, among numerous cases to the same effect, *Butler* v. *Wendell*, 57 Michigan, 62; *Receiver* v. *First National Bank*, 7 Stewart, (34 N. J. Eq. 450); *Egbert* v. *Baker*, 58 Connecticut, 319; *Chafee* v. *Fourth National Bank of New York*, 71 Maine, 514; *Ockerman* v. *Cross*, 54 N. Y. 29; *Weider* v. *Maddox*, 66 Texas, 372; *Thurston* v. *Rosenfield*, 42 Missouri, 474.

We do not regard our decision in *Green* v. *Van Buskirk*, 5 Wall. 307; 7 Wall. 139, as to the contrary. That case was fully considered in *Cole* v. *Cunningham, supra,* and need not be reëxamined. The controversy was between two creditors of the owner of personalty in Illinois, one of them having obtained judgment in a suit in which the property was attached and the other claiming under a chattel mortgage. By the Illinois statute such a mortgage was void as against third persons, unless acknowledged and recorded as provided, or unless the property was delivered to and remained with the mortgagee, and the mortgage in that case was not acknowledged and recorded, nor had possession been taken. All parties were citizens of New York, but that fact was not

considered sufficient to overcome the distinctively politic and coercive law of Illinois.

In our judgment, the Idaho statute was inapplicable and the assignment was in contravention of no settled policy of that Territory. It was valid at common law, and valid in Utah, and the assignee having taken possession before the attachment issued, the District Court was right in the conclusions of law at which it arrived.

The judgment is reversed and the cause remanded to the Supreme Court of the State of Idaho for further proceedings not inconsistent with this opinion.

*Judgment reversed.*