SCHINDELHOLZ et al. v. CULLUM.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1893.)

No. 192.

1. INSOLVENCY LAWS—PUBLIC POLICY—PREFERENCES.

The insolvent laws of Colorado are of a purely voluntary character, and the requirement that all assignments made shall be for the benefit of all creditors, alike, does not compel creditors to participate in the benefits of an assignment, or to relinquish any of the ordinary remedies for the collection of their debts when a debtor is insolvent or in failing circumstances. Hence there is nothing in the policy of the law to prevent a nonresident creditor of a failing Colorado corporation from attaching lands thereof which are situated in the state of his residence.

2. RECEIVERS—POWER OF COURT—LAND SITUATED IN ANOTHER JURISDICTION —INJUNCTION.

A court of equity which has appointed a receiver of lands situated in another state or jurisdiction has no power to enjoin a citizen of such jurisdiction from levying an attachment on such lands, unless he is a party, either in person or by representation, to the litigation in which the receiver was appointed.

3. SAME—PLEADING—ESTOPPEL.

The fact that plaintiff in such attachment suit was erroneously described by his pleadings therein as a citizen of the state in which the receiver was appointed (his citizenship being neither jurisdictional, nor otherwise material) will not estop him or his successors in interest from showing his true citizenship, in a proceeding brought by the receiver to enjoin him.

4. SAME—PARTIES—PURCHASE OF LIENS.

A lien having been established by the attachment suit, which neither the receiver nor the corporation's other creditors could divest, there was nothing to prevent a party to the receivership litigation, and a citizen of that jurisdiction, from taking an assignment of the judgment and lien, with all the rights of enforcement belonging to the original owner.

5. SAME—RIGHT TO ACQUIRE LIENS BY ATTACHMENT.

But where a party who had joined in the receivership litigation, and had been active in extending the receivership to the lands in question, afterwards caused suit to be brought in the jurisdiction where the latter were situated, to collect a debt, and thereby obtained a lien on the lands, the court had authority to enjoin him from enforcing the lien, or in any way interfering with the receiver's possession or disposition of the property.

Appeal from the Circuit Court of the United States for the District of Colorado.

In Equity. Bill by Henry B. Cullum, receiver of the Wendling Cattle & Land Company, against Anton Schindelholz and John G. Benkleman, to enjoin them from enforcing certain judgment liens against the lands of the company. An injunction was granted by the court below, and defendants appeal. Reversed.

Statement by THAYER, District Judge:

This case was submitted to the circuit court on the bill and answer, without the introduction of any evidence. The facts are therefore undisputed, and they are substantially as follows: The Wendling Cattle & Land Company (hereafter termed the "Land Company") is a corporation of Colorado. On the 4th day of March, 1889, Irving J. Atwood and others filed a bill of complaint against the Land Company, its officers and directors, in the circuit court of the United States for the district of Colorado. Among the defendants in that suit was the appellant Anton Schindelholz, who was at the time one of the directors of the Land Company. The bill charged that Edward F. Lamb and Samuel S. Smythe, who were, respectively, the president and secretary of the Land Company, had been guilty of various fraudulent acts in the management of the corporate affairs, and, among other things, that as officers of the corporation they had executed a mortgage, without any consideration, and for their personal benefit, upon the Glen Mora ranch, situated in the territory of New Mexico, which belonged to the Land Company, to secure notes of the Land Company to the amount of $60,000. The bill also charged ·that the Land Company was insolvent, and it contained a prayer that Lamb and Smythe might be enjoined from negotiating the notes above referred to; that the mortgage securing the same might be canceled; that the Land Company might be dissolved, and wound up; and that a receiver of its property might be appointed. On April 27, 1889, Anton Schindelholz filed an answer to said bill, wherein he averred that he was the owner of 320 shares of the Land Company's stock; that he had given no attention, until recently, to the management of its affairs by Lamb and Smythe; and that he was satisfied, by a recent investigation of its condition, that a receiver should be appointed, as prayed for by the complainants. On the same day (April 27, 1889) Henry B. Cullum, the appellee, was duly appointed and qualified as receiver of the Land Company. The order of appointment directed him to take possession "of all and singular the real estate and personal property held, owned, and possessed by the said Wendling Cattle & Land Company, whether situated within the state of Colorado, or elsewhere;" but no order was made on the Land Company, requiring it to convey any of its lands to the receiver, and no such conveyance was in fact made. The order also contained the usual clause enjoining all parties to the suit from interfering with the receiver. Prior to these transactions, and in January, 1887, John K. Woodburn had recovered a judgment against the Land Company in one of the state courts of Colorado for some $15,000, and, on an appeal taken to the supreme court of the state, Anton Schindelholz had become surety for the Land Company on its appeal bond. On June 13, 1890, the judgment appealed from was affirmed by the supreme court of Colorado, and thereafter Woodburn brought a suit by attachment against the Land Company and Schindelholz upon said appeal bond in one of the district courts for the territory of New Mexico, and recovered a judgment against them, in the sum of $21,361, on the 8th day of October, 1890. A transcript of said judgment was filed with the recorder of the county where the Glen Mora ranch is situated, with a view of fixing a lien thereon pursuant to the laws of New Mexico. Schindelholz afterwards paid the amount of said judgment to Woodburn, and caused it to be assigned for his benefit to John G. Benkleman, who is also an appellant.

In September, 1890, Schindelholz further assigned to Benkleman a certain note of the Land Company, which he then owned, with a view of having a suit brought thereon by Benkleman in the courts of New Mexico. Such suit was thereupon brought by attachment in Benkleman's name, but for the sole benefit of Schindelholz, which resulted in a judgment against the Land Company in the sum of $48,342 on the 9th day of October, 1890. A transcript of the latter judgment was likewise filed in the proper counties, with a view of fixing a judgment lien on the real estate of the Land Company situated in New Mexico. The receiver appointed by the United States circuit court did not defend either of the two attachment suits thus brought in the territory of New Mexico, for the reason, as alleged, that he was not notified that such suits were pending. In the month of June, 1890, the receiver of the Land Company was ordered by the United States circuit court for the district of

Colorado to sell the Glen Mora ranch at a price not less than $1.25 per acre, and the same had been advertised for sale pursuant to said order, but had not in fact been sold, when the two attachment suits aforesaid were instituted in the courts of New Mexico. It does not appear that the receiver ever had any possession of the Glen Mora ranch, either in person or by agent, save such constructive possession as may have been conferred by the order appointing him as receiver.

The present proceeding is an original bill filed by the receiver in the United States circuit court for the district of Colorado to compel Schindelholz and Benkleman to release the judgment liens which they have acquired on the real property of the Land Company in the territory of New Mexico. On the hearing in the circuit court it was stipulated that the indebtedness of the Land Company to John K. Woodburn, on account of which the latter recovered a judgment against the Land Company in the courts of Colorado, was contracted by the Land Company in New Mexico while Woodburn was a resident of that territory; that Woodburn had become a resident and citizen of Colorado when he commenced a suit to recover the debt in that state, and that he remained such when the appeal bond was signed, in January, 1887, but that he had again become a resident and citizen of New Mexico in September, 1890, when he brought suit against the Land Company and Schindelholz upon the appeal bond in the courts of New Mexico. The circuit court entered a decree in favor of the receiver, enjoining the appellants from enforcing either of the judgments obtained in New Mexico, as against the property of the Land Company situated in that territory, and further commanding them to recall the executions which had been issued on said judgments, and to release the real estate of the Land Company from the liens created by filing transcripts of said judgments in the counties where the lands were situated.

H. E. Luthe and S. D. Barnes, for appellants.

John F. Shafroth, for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

It is a doctrine which has recently been approved by the supreme court of the United States that the courts of one state or sovereignty have authority over their own citizens to restrain them from prosecuting suits by attachment in a foreign jurisdiction against other citizens of the home state or sovereignty, when the maintenance of such suit in the foreign jurisdiction is contrary to equity and good conscience, and tends to defeat the policy of local insolvent laws. The authority in question is said to be a part of the inherent power of a court of chancery over persons subject to its jurisdiction. But to warrant its exercise the complaint must show a clear equity. The courts of one state or sovereignty will not restrain a citizen of that state from suing another citizen by attachment in a foreign jurisdiction unless such proceeding clearly contravenes the policy of some local law or statute to which both parties owe obedience by reason of their common citizenship. Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. Rep. 269; Dehon v. Foster, 4 Allen, 545; Warner v. Jaffray, 96 N. Y. 248; Jenks v. Ludden, 34 Minn. 482–487, 27 N. W. Rep. 188; Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. Rep. 403.

It is evident, we think, that the doctrine last referred to has no application to the case in hand, and that it cannot be successfully invoked by the receiver of the Land Company. The statutes of Colorado provide that "no deed of general assignment * * * by an insolvent * * * for the benefit of creditors shall be valid unless * * * it be made for the benefit of all of his creditors, in proportion to the amount of their respective claims." Section 171, Mill's Ann. St. 1891. But the statute in question contains no provisions which can be held to preclude a citizen of that state from attaching the property of another citizen of the state, either at home or in a foreign jurisdiction, merely because the latter has become insolvent, and because such attachment may result in a preference. The insolvent laws of Colorado are of a purely voluntary character. They do not constrain persons to execute an assignment in the event of insolvency. Neither do they compel creditors to participate in the benefits of a general assignment, when made, or to relinquish any of the ordinary remedies for the collection of debts when a debtor is in failing circumstances, or has become bankrupt. In this connection it is also proper to remark that the receiver's title to the assets of the Land Company, and the mode of administering upon the same, is not aided or affected by any existing statute of the state of Colorado relative to the dissolution of private business corporations when they become insolvent. The suit brought by Atwood and others to obtain the appointment of a receiver, and to wind up and liquidate the affairs of the Land Company, on the ground of its insolvency, does not appear to have been founded on the provisions of any local statute which authorized such a proceeding, but was an appeal to the ordinary jurisdiction of a court of chancery, whatever that may be.

We are of the opinion, therefore, that the conduct of the appellants in causing suits to be brought against the Land Company in the territory of New Mexico, with a view of obtaining a preference, was not in contravention of any policy of the state of Colorado, as evidenced by its laws, and that an injunction such as was awarded by the circuit court cannot be supported on such grounds. It goes without saying that the conclusion reached on this branch of the case would be the same if all of the persons concerned in the controversy, including John K. Woodburn, one of the attaching creditors, were citizens of Colorado.

In another class of cases, which are chiefly relied upon to sustain the decree of the circuit court, it is held that courts which have appointed receivers over property situated in a foreign jurisdiction may either restrain or punish persons who interfere with the receiver's possession of such property, even though the interference consists in attaching it under process obtained from some court in the foreign state. Vermont & C. R. Co. v. Vermont Cent. R. Co., 46 Vt. 792; Chafee v. Quidnick Co., 13 R. I. 442; Sercomb v. Catlin, 128 Ill. 556, 21 N. E. Rep. 606; Langford v. Langford, 5 Law J. Ch. (N. S.) 60. In all of the cases last cited, however, the

person proceeded against for interfering with the receiver's constructive possession of property located in a foreign jurisdiction was either a party to the litigation in which the receiver had been appointed, or in privity with a party, or was otherwise subject to the jurisdiction of the court by virtue of his residence or citizenship. It is also worthy of notice that the property involved was personalty, and that the owner thereof was domiciled in the state where the receivership was created. In considering the question of a receiver's title to property located in a foreign jurisdiction a distinction has sometimes been taken between personalty and realty, but, as the case at bar simply involves the right to attach realty, situated in a foreign state, we need not stop to inquire whether the distinction is well founded, or whether the power of a court to restrain persons from intermeddling with a receiver's possession of personal property thus situated is in any respect, or for any reason, more extensive than its power to restrain a like interference with real property. For present purposes it will suffice to say that in our opinion a court has no power to enjoin a citizen of a foreign state or sovereignty from causing a levy to be made on lands which are situated in the foreign state, and beyond its territorial jurisdiction, because it has appointed a receiver of such property, unless the person so enjoined is a party, either in person or by representation, to the litigation in which the receiver was appointed. Courts of chancery, doubtless, have power to compel persons subject to their jurisdiction to execute conveyances of property located in a foreign state, which will generally be respected by the courts of the latter sovereignty if they are executed in conformity with their laws. Phelps v. McDonald, 99 U. S. 298–308; Miller v. Sherry, 2 Wall. 237–249; Watkins v. Holman, 16 Pet. 25–57; Mitchell v. Bunch, 2 Paige, 606–615. By means of such orders, and conveyances made thereunder, a court may be able to vest its receiver with the title to realty situated in a foreign jurisdiction, which will be there recognized as valid. But an order appointing a receiver of realty has no extraterritorial operation, and cannot affect the title to real property which is located beyond the jurisdiction of the court by which the order was made. Booth v. Clark, 17 How. 322–328. Such orders, therefore, only operate in personam, and upon those persons who are so related to the court, either as parties to the litigation, or by virtue of residence and citizenship, that they are bound to yield obedience to its orders. In conformity with these views we are led to conclude that John K. Woodburn acquired a valid lien on the property of the Land Company in the territory of New Mexico, which the circuit court for the district of Colorado was without power to divest. He was in nowise concerned, as a party or otherwise, in the Colorado suit wherein the receiver was appointed. He was a citizen and resident of New Mexico when the attachment suit was brought, and it is conceded that the indebtedness which he sought to enforce by that suit had its origin in New Mexico, and grew out of business transactions between himself and the

Land Company in the territory of New Mexico, while he was domiciled in that jurisdiction. We can attach no weight to the suggestion of counsel that a suit was first brought by Woodburn to recover the indebtedness in the courts of Colorado, and that the appeal bond was there executed, or to the further suggestion that, in the suit brought upon the appeal bond in New Mexico, Woodburn was described in the complaint as being at that time a citizen of Colorado. With reference to the first of these suggestions it is sufficient to remark that, if Woodburn's right to maintain the attachment suit is at all dependent upon the place where the indebtedness was contracted, then we must look to the origin of the indebtedness, and to his citizenship at that time, rather than to the form which the indebtedness subsequently assumed. And with respect to the second suggestion we deem it sufficient to say that the appellants are not estopped in this suit from showing that Woodburn was in reality a citizen and resident of New Mexico when he sued on the appeal bond, by the fact that he was inadvertently and erroneously described by his attorney as being a citizen of Colorado. The averment as to citizenship in the attachment suit was not jurisdictional in its character, and seems to have had no bearing upon Woodburn's right to maintain the action in the courts of New Mexico. We fail to perceive any reasonable ground, therefore, upon which an averment thus innocently and erroneously made could operate as an estoppel in this proceeding, whatever effect might be accorded to it in the suit in which the averment is found. Reynolds v. Adden, 136 U. S. 348, 10 Sup. Ct. Rep. 843.

The next question to be considered is whether Schindelholz, as assignee of the Woodburn judgment, has the same rights thereunder as his assignor. It is insisted by the appellee that Schindelholz is estopped from enforcing that judgment, and that the circuit court properly enjoined him from so doing, for the reason that Schindelholz is a citizen of Colorado, and a party to the suit in that state to wind up the Land Company, and because he was also instrumental in procuring the appointment of a receiver of all of its property, including the New Mexico lands. These may be, and we think they were, adequate reasons for restraining him from enforcing the judgment in his own behalf, which was recovered in the name of Benkleman; but they are insufficient, we think, to deprive him of the right of subrogation, with which he became vested when, as a surety for the Land Company, he paid the amount of the Woodburn judgment, and caused it to be assigned to Benkleman for his benefit. There is no element of estoppel in the conduct of the appellants, so far as we can discover. When Woodburn secured a valid lien on the New Mexico lands, which the other creditors of the Land Company were without power to divest, they had already sustained whatever loss or damage the enforcement of such lien could possibly entail. It was thereafter a matter of no concern to the receiver, and to the other creditors of the Land Company, whether such lien was en-

forced by Woodburn, or whether Schindelholz, by assignment of the judgment, became subrogated to his rights. In either event the result would be the same. It is obvious, therefore, that the right to compel Schindelholz to relinquish his lien under the Woodburn judgment, so that the lands may be sold, and the proceeds distributed ratably among the general creditors of the Land Company, must be predicated solely on the ground that he is a party to the suit wherein the receiver was appointed, and was instrumental in securing such appointment. With reference to that ground of recovery, we deem it sufficient to say that the fact that he was thus a party to the suit to wind up the Land Company did not deprive him of the right to purchase the Woodburn judgment. Neither does his connection with that suit give the other parties thereto a right to insist that he shall cancel the lien of the Woodburn judgment, to which he has become subrogated. As well might it be claimed that he should surrender other liens upon the property of the Land Company, lawfully acquired before the suit to wind up the company was instituted. Courts of equity have always gone to the extreme limit of their power in aiding a surety who has discharged the debt of his principal to obtain the benefit of securities, liens, and priorities held by the original creditor, but we are not aware of an instance where they have lent their aid to deprive a surety of such benefits. Hunter v. U. S., 5 Pet. 173; Lidderdale v. Robinson, 12 Wheat. 594; Thompson v. Taylor, 72 N. Y. 32; Fleming v. Beaver, 2 Rawle, 128; Rice v. Rice, 108 Ill. 199; Brandt, Sur. 271–274.

Our conclusion is that Schindelholz has succeeded to all of the rights of Woodburn with respect to the judgment recovered by the latter in the courts of New Mexico, including his right, which we think was unquestionable, to enforce it in the mode provided by the laws of that territory. The decree of the circuit court, divesting him of those rights, was therefore erroneous. With respect to the other judgment the appellants occupy a less favorable attitude, as we have heretofore intimated. That judgment was recovered by Schindelholz in the name of Benkleman, after the former had joined in the suit to wind up the Land Company, and to obtain an equitable distribution of its assets among all of its creditors. At his solicitation the circuit court was induced to extend the receivership over the lands located in New Mexico, and to make an order directing them to be advertised and sold. Under these circumstances, and without reference to the nature of the receiver's title, we think it was competent for the trial court to restrain the appellants from taking any action under the Benkleman judgment that would prevent the receiver from obtaining possession of the property in New Mexico, or that would obstruct him in any way in the discharge of his trust, or that would interfere with the proceeding to wind up the Land Company. The jurisdiction which the court had theretofore acquired over Schindelholz was fully adequate, in our judgment, to warrant the exercise of such coercive powers.

For the reasons indicated the case must be reversed and remanded, and all of the provisions of the decree from which the appeal was taken must be canceled, which in any wise interfere with the appellant's right to enforce the Woodburn judgment.

In view of possible future action which may be taken by the creditors of the Land Company, we think it would be unwise to require the appellants to execute a present release of the lien acquired under the judgment obtained in the name of Benkleman. Therefore the case will be remanded to the circuit court, with directions to vacate its former decree, and in lieu thereof to enter a decree restraining the appellants from taking any present action to enforce the judgment recovered in the name of Benkleman, or any future action in that behalf save such as may be first sanctioned and approved by the United States circuit court for the district of Colorado, and further requiring said appellants to take all such future proceedings with respect to said judgment as may be required of them by said court in the suit to wind up the Land Company.