## GALBRAITH v. KLINE.

### In re CHAPIN.

(District Court, D. Montana, Great Falls Division. June 26, 1925.)

No. 4.

**1. Assignments for benefit of creditors ⊕═40—Common-law assignment, consented to by creditors, valid, without compliance with insolvency laws.**

A common-law assignment for benefit of creditors is valid as to assignor and consenting creditors, though state insolvency laws have not been complied with, and is void only as to any nonconsenting creditors and purchasers and incumbrancers in good faith and for value.

**2. Bankruptcy ⊕═178(3)—No right in trustee to property assigned with consent of all creditors for their benefit.**

Under Bankruptcy Act, § 70e (Comp. St. § 9654), and section 47a, as amended (Comp. St. § 9631), trustee could not avoid bankrupt's common-law assignment for benefit of creditors, made 20 months before bankruptcy proceeding, with consent of all the creditors, nor recover from the assignee such of the property as remained undistributed at time of adjudication.

In Equity. Suit by John P. Galbraith, trustee, against John M. Kline, trustee in bankruptcy of the estate of Ambrose W. Chapin, bankrupt. Decree for plaintiff.

S. E. Paul, of Plentywood, Mont., and Kerr & Richardson, of St. Paul, Minn., for plaintiff.

John Hurly, of Glasgow, Mont., and John L. Slattery, of Helena, Mont., for defendant.

PRAY, District Judge. This is a suit in equity to determine the right to possession of $18,600, deposited in the Glasgow National Bank, of Glasgow, Mont., and other property specifically described in the complaint and hereinafter mentioned. Said sum of money represents the proceeds of sale of the Mercantile business formerly owned and conducted by Ambrose W. Chapin, above-named bankrupt, as hereinafter set forth. The other property described in the complaint consists of real estate, a certificate of deposit in the sum of $1,861.30, and cash amounting to $1,251.31; the last two items having been derived from sales, in the reg-

ular course of said business by plaintiff under an assignment from said Chapin. The real estate, certificate, and cash last mentioned are in possession of plaintiff, and the final disposition of all of said property awaits the result of this suit.

The facts appear to be as follows: That on September 13, 1920, Ambrose W. Chapin, residing and doing business at Scobey, Mont., under the name and style of Scobey Mercantile Company, was the owner and possessed of certain personal and real property in Scobey, Mont., and certain real property in Canada; that he was indebted to divers persons, most of them nonresidents of Montana; that he was insolvent, and on that day, while temporarily sojourning in St. Paul, Minn., conferring with his creditors, he made, executed, and delivered to John P. Galbraith, as his assignee, plaintiff herein, a deed of assignment, which was accepted by Galbraith, who assumed the execution thereof, and which, according to plaintiff, was duly assented to and accepted in writing by all of the then existing creditors (parties of the third part therein) of Chapin and the Scobey Mercantile Company, and on that day, Chapin made, executed, and delivered to Galbraith, as such assignee, separate deeds to all of his real estate; that by such assignment Chapin "sold, transferred, assigned, and delivered" to Galbraith all his property, real and personal, in trust, to take possession and convert the same into cash, pay the necessary expenses, and then the creditors, and any residue remaining was to be paid to Chapin.

Galbraith at once took possession of the property by his agent, one Peterson, as he was authorized to do by his deed of assignment. The deed of assignment was never recorded, but the deeds conveying the real estate were duly recorded in the proper counties. During the time Galbraith was in possession, as trustee, from September 13, 1920, to May 11, 1922, he disbursed to the creditors a dividend of 10 per cent., which they accepted. The creditors never objected to the assignment, which seems to be, in effect, a common-law trust agreement, or to the plaintiff's management thereunder. Chapin had no property in Minnesota. All of the property subject to plaintiff's management and control was situated at Scobey, Mont., with the exception of the said tract of 160 acres of land in Canada, which appears to have been mortgaged for $1,200.

On May 11, 1922, one Hillman, who succeeded Peterson as the agent of plaintiff, was ejected from said place of business by Chap-

in's son, and plaintiff never thereafter regained possession of the Mercantile business. Hillman at the time protested against being ejected and dispossessed of the business, and plaintiff has never consented to or acquiesced in such action. It does not appear that plaintiff has ever committed any breach of his agreement. On May 11, 1922, the same day that plaintiff was dispossessed of the Mercantile business, said Chapin filed his voluntary petition in bankruptcy, was adjudged by above court as a bankrupt and his estate was referred to the referee at Glasgow, Mont. At the first meeting of creditors on May 27, 1922, the defendant herein was elected the trustee and qualified.

On May 13, 1922, the plaintiff, without knowing of the bankruptcy proceeding by Chapin, commenced an action in the district court of Daniels county, Mont., whereby he sought to recover possession of the property that had been taken from his agent, Hillman, and the property thereafter remained in the custody of the sheriff until May 31, 1922, when the plaintiff and defendant entered into an agreement (Exhibit H, in complaint) wherein they agreed that second party (defendant herein) should be permitted to inventory and ascertain the value of the property in question, and that thereupon the defendant, as such trustee, would apply to the referee for an order to sell the property, subject to further conditions in the agreement, as follows; agreed that plaintiff shall have possession until "ownership and right of possession and right of administration" has been determined by the court, and that no sale shall be made until then, but that a sale might be made upon their joint written consent, approved by the referee, and upon giving a joint bill of sale, and that the proceeds of any such sale should be deposited to the joint credit of plaintiff and defendant as such trustee, after deducting expenses, and that the balance should remain "intact until the final determination of the ownership thereof." They further agreed that defendant demands possession, and, unless delivered before June 30, 1922, that defendant will commence action for adjudication in the proper court "to determine validity of common-law trust deed under which said first party holds." They further agree that no rights are waived on either side. This agreement was approved by the referee, who thereafter repudiated it, and together with the trustee (defendant herein) took possession of the Mercantile business and property over the protest of plaintiff.

Prior to the commencement of this action,

plaintiff demanded of defendant and of the referee that they deliver possession of the property to plaintiff and demand was refused. Chapin is indebted to creditors in the sum of $44,000, and therefore there can be no equity in said property in favor of Chapin after the payment of his indebtedness. On July 29, 1922, the real property at Scobey, Mont., and the merchandise and fixtures, were sold by defendant for $18,-600. The sale was thereafter confirmed by the referee, and the money deposited in the Glasgow National Bank. Defendant has made the following disbursements: Montana Abstract Company, $32; taxes to county treasurer of Daniels county, $961.51; Sam Grossman, $75. The Williston Farmers' Creamery Company is a creditor, and has been ever since the giving of the trust deed to plaintiff, and has never filed its claim in the bankruptcy proceedings. It also appears that plaintiff has never complied with sections 6144 to 6154, inclusive, of the Revised Code of Montana for 1907, and has never complied with the statutory provisions in force in Minnesota relating to assignments.

In the stipulation of the parties as to the evidence, dated November 26, 1924, and received December 10, 1924, it appears that the witness Peterson, the first agent of plaintiff in charge of the Mercantile business, made a list of creditors from Chapin's books about the time of the execution of the trust agreement, and that the latter and his son were employed there as clerks, so that the probability of a mistake having been made in the list of creditors is remote. Furthermore, it appears that none of the persons or firms set out by Chapin in his schedules in bankruptcy and included in the stipulation has ever filed a claim in the bankruptcy proceedings, nor does the name of any of them appear on the creditors' list concerning which testimony was given by plaintiff and Peterson. Plaintiff testified that the list was true and correct, and contained all of the creditors at the time of giving the trust agreement, that no other creditors ever appeared or made claim to the estate, and that a dividend had been received by each of the then existing creditors.

No testimony was given at the trial, either by Chapin or his son, in support of defendant's allegations; consequently it is not known what explanation they would give concerning the additional claims bearing dates prior to the date of the deed of assignment and not included in the original list, in the preparation of which, it is fair

to assume, they aided Agent Peterson, and with which, in the very nature of things, they must have been familiar. The evidence at the trial in some respects was not satisfactory, and was not reduced to writing, except the exhibits, and except such as now appears in the stipulation dated November 26, 1924, which was required by the court with the alternative of a new trial of the issues; however, taken in its entirety, it appears that the preponderance of the evidence is in favor of the contentions of the plaintiff that all of the then existing creditors consented to the deed of assignment, and that no other creditors have ever materialized.

It may be stated generally that the validity of an assignment for the benefit of creditors is to be determined by the statute law in force at that time, in the state in which it is made, or in its absence by the common law. Barnett v. Kinney, 147 U. S. 476, 13 S. Ct. 403, 37 L. Ed. 247; Union Bank v. Kansas City Bank, 136 U. S. 223, 10 S. Ct. 1013, 34 L. Ed. 341; Van Wyck v. Read (C. C.) 43 F. 716; Watson v. Bonfils, 116 F. 157, 53 C. C. A. 535; McKibbin v. Ellingson, 58 Minn. 205, 59 N. W. 1003, 49 Am. St. Rep. 499. The validity of assignments, except as otherwise provided by statute, is to be determined on principles of the common law (68 C. J. 1173), and a general assignment has frequently been held to operate as a common-law assignment, although not valid as a statutory assignment (69 C. J. 1113). A creditor may bind himself by his assent to an assignment which is not within the provisions of the statute. Derry Bank v. Davis, 44 N. H. 548; Brennen Co. v. Willson, 71 N. Y. 502; Winn v. Madden, 18 Mo. App. 261.

"Creditors, who have acted in a manner implying acceptance of the assignment, or for the purpose of gaining some advantage, are thereafter estopped to deny its validity. * * * The acceptance of dividends under an assignment, with knowledge of the facts, precluded future attacks on its validity, and it has even been held that the bare presentation of claims to the assignee has this effect." 2 Ruling Case Law, 722. The instrument in controversy does not purport to have been executed under any statute, but was an ordinary common-law assignment, and as such is not of itself illegal (Jewell v. Knight, 123 U. S. 426, 8 S. Ct. 193, 31 L. Ed. 190), and when tested by the law of that state where made, if found to be valid, its validity will be recognized and the instrument will be held to pass property in another jurisdiction, provided it is not opposed to the laws or public policy of such other jurisdiction and is not prejudicial to creditors residing therein (Schroder v. Tompkins [C. C.] 58 F. 672; Van Wyck v. Read [C. C.] 43 F. 716; Atherton Co. v. Ives [C. C.] 20 F. 894; Green v. Van Buskirk, 5 Wall. 307, 18 L. Ed. 245; In re Nelson [D. C.] 149 F. 590; Schuler v. Israel [C. C.] 27 F. 851; affirmed 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707).

[1] The weight of authority holds valid a common-law assignment for the benefit of creditors as against the assignor and consenting creditors, although the insolvency laws of the state have not been complied with. Wilhoit v. Lyons, 98 Cal. 409, 33 P. 325; Bryant v. Langford, 80 Cal. 542, 22 P. 219; Wilhoit v. Cunningham, 87 Cal. 453, 25 P. 675; Garn v. Thorwaldson, 40 Cal. App. 62, 180 P. 9. The universal rule seems to be that such a deed is void only as to creditors who do not consent, or as to purchasers and incumbrancers in good faith and for value.

[2] The assignment was made with written consent of all the creditors, and the assignee took possession nearly a year and eight months before bankruptcy proceedings were begun. The grantor reserved no interest in the property. The specific purpose was for the benefit of creditors. It has been held that the only possible interest that could inure to the debtor would be the surplus after the payment of debts. Under Bankruptcy Act, § 70e (Comp. St. § 9654), the trustee becomes subrogated to the rights of creditors, and such assignment was not binding on a nonassenting creditor; consequently the trustee could avoid it if such nonassenting creditor could be found. Under the amendment to section 47a of above act (Comp. St. § 9631) as to all property not in the custody of the bankruptcy court, the trustee shall be deemed vested with the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied, which would represent the situation of the trustee in bankruptcy in the instant case, inasmuch as his possession of the property in question seems to have been acquired from plaintiff by unlawful means. In re Shinn (D. C.) 185 F. 990; In re Bridge (D. C.) 230 F. 184; Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377; Simonson v. Sinsheimer, 95 F. 948, 37 C. C. A. 337; Stellwagen v. Clum, 245 U. S. 605, 38 S. Ct. 215, 62 L. Ed. 507; In re Farrell, 176 F. 505, 100 C. C. A. 63; Ohio v. Eiseman Co., 230 F. 370, 144 C. C. A. 512;

Spindle v. Shreve, 111 U. S. 542, 4 S. Ct. 522, 28 L. Ed. 512.

It has been suggested by counsel that the trustee in bankruptcy might have the right to recover property from the assignee remaining undistributed at the time of adjudication, on the theory that the assignee is the agent of the bankrupt; but the weight of authority seems to be opposed to such theory. Mayer v. Hellman and Stellwagen v. Clum, supra.

The essential questions in this case having been considered, in my opinion the complainant is entitled to a decree in his favor, with such allowance for disbursements by defendant as may be established as necessary and proper; and it is so ordered.