### *EX PARTE* DICKINSON'

### *IN RE* SHELDON v. BLAUVELT.

1. May an assignee under a deed of assignment intervene by petition to dissolve attachments issued against the assigned estate, as the property of the assignor? And if not, will an unappealed order, directing an issue, under the petition, to try the title to the property attached, prevent objection afterwards?

2. A statute of this State declares that any assignment by an insolvent debtor for the benefit of his creditors in which any preference is given shall be null and void and of no effect whatever. The New York statute *requires* such an assignment to give a preference to employees. A citizen of New York made an assignment in accordance with the New York law. *Held*, that the preference therein contained rendered the assignment void in this State, and that creditors residing in New York and elsewhere, who subsequently attached real and personal property of the assignor in this State, acquired a lien on the property attached.

3. In the transfer of personal property, the law of the domicile will not govern where such law conflicts with the policy of the law of this State and its statutory requirements.

4. Our assignment act applies to assignments executed without the State as well as to those executed within it. This case distinguished from *Russell* v. *Tunno*, 11 Rich., 315, and from the statute there construed.

5. Respondent should notify appellant of such additional grounds as he intends to rely upon in support of the Circuit decree.

6. A non-resident has the same rights as a citizen under the attachment laws of this State.

MR. CHIEF JUSTICE SIMPSON concurred in the result.

Before WALLACE, J., Lancaster, October, 1887.

These were five attachment suits against James H. Blauvelt, the plaintiffs being George P. Sheldon, National Pahquioque Bank, J. B. McGeorge, Nineteenth Ward Bank, and Hanover National Bank. The first two named plaintiffs were residents of Connecticut and the other three were residents of New York. Asa D. Dickinson, assignee of James H. Blauvelt, intervened by petition, and sought to recover the real and personal property attached. The Circuit decree was as follows:

On the 15th day of October, 1886, James H. Blauvelt, a citizen of the State of New York, executed to Asa D. Dickinson, a

citizen of the same State, a deed of assignment of all his property, real and personal, upon the trust that he would convert the same into money and distribute the same among the creditors of the assignor ratably and in proportion to their demands against him, except as to the wages and salaries of the laborers and employees of the assignor, and these were to be first paid in full. There are no creditors of the assignor in this State, all his creditors being citizens of the State of New York save one, who is a citizen of Connecticut, and the bulk of his property is situated in the State of New York. He owned, however, in this State, in the County of Lancaster, an undivided two-thirds interest in a tract of land and a cotton gin and portable engine and saw mill situated thereon. The deed of assignment was duly recorded in the register's office for Lancaster County, on the 18th day of October, 1886. It appears to have been signed, sealed, and delivered by the grantor in the presence of two witnesses, and conveys all the property of the grantor, except legal exemptions, real and personal.

After the registry of the deed in Lancaster, five creditors of the assignor, four from the State of New York and one from the State of Connecticut, brought actions individually upon their demands, and sued out attachments, which were levied upon all the property of the assignor in this State. Whereupon the assignee filed a petition in each case named at the head of this decree, asking that the attachments be dissolved and the property declared to be his for the purposes of the assignment. The five cases will be considered together, as they were argued together and involve the same facts and principles.

There is a preliminary question as to the nature of some of the property attached; that is, the cotton gin and the engine and saw mill. Are they fixtures, and therefore part of the realty, or are they personal property? The weight of the testimony indicates that the cotton gin was attached by the band to the gin house, and in such case it has been held in several cases that a cotton gin is a fixture. See *Faris* v. *Walker*, 1 Bail., 540; *Nimmons* v. *Moye*, 1 Rice's Dig., 317; *M'Kenna* v. *Hammond*, 3 Hill, 331.

Although the precise question has not been decided in this State, I think it equally clear that the portable engine and saw

mill are not fixtures. A cotton gin is a fixture, because it is not only attached to the soil, but is, when in a permanent gin house, obviously intended to be permanent, and is necessary for the convenient use of a cotton plantation. But where a structure is placed upon land not to promote the convenient use of the land; but to be used for some temporary purpose external to the land, and the land is used only for a foundation because some foundation is necessary for the business, then the structure and its belongings are not fixtures. The testimony in this case is to the effect that the portable engine and saw mill, although in some degree attached to the soil, were used for the promotion of the business of sawing logs into lumber, and had no relation to the convenient use of the plantation as such. The engine and saw mill, therefore, in my opinion are personal property.

The essential question in the case, however, is: Has the assignor, Blauvelt, any leviable interest in the property levied on under the attachments? It has been frequently held in this State that the laws of a foreign State governing the disposition of an insolvent's estate have no application here, *proprio vigore*, to property of the insolvent resident in another State, for the obvious reason that the laws of a State are necessarily territorial so far as other independent States are concerned. *Assignees of Topham* v. *Chapman*, 1 Mill Con. R., 283; *Crowder, Clough & Co.* ads. *Robinson*, 4 McCord, 519.

The rule is different, however, when the act of the owner prescribes the rule of disposition. The rule prescribed by the owner will be allowed to operate upon his property in this State, although he be a citizen of another State, provided the rule prescribed is not inconsistent with our laws and to the prejudice of our citizens. *Russell* v. *Tunno, Pinckney & Co.*, 11 Rich., 315. The personal property follows the person of its owner in contemplation of law wherever he goes, and, no matter where it may actually be, is effectually disposed of by its owner when transferred according to the mode prescribed by the law of the owner's domicile; and this not because laws of another State apply here, but because such is the law of this State.

The soil, on the other hand, is part of the State and forever remains so, and can only be transferred according to the mode

prescribed by the State within whose territorial limits it is. It is not necessary that the instrument of conveyance should be executed within the State, but according to the form and with the solemnities prescribed by the laws of the State. Transfers of real or personal property by non-residents of this State owning property here, made according to the methods indicated, will always be observed and upheld by the courts of this State, unless there is in addition to the mere transfer a condition of alienation inconsistent with the laws of this State and injurious to the rights of her citizens. *Russell* v. *Tunno, supra.*

The deed of assignment here was executed with all the solemnities and forms required by the laws of South Carolina to pass land. There is a trust attached to the conveyance that the grantee shall convert the property conveyed into money and apply it ratably to the debts of the grantor, except to such debts as are due for salaries and wages of the employees of the assignor, which must first be paid in full. The whole property of the grantor is conveyed. It is agreed that this provision of the deed which provides that debts due employees shall be preferred in the order of payment is inconsistent with our statute (*Gen. Stat.*, 2014), which provides that any preference in the order of payment of the debts of an insolvent debtor provided for in a deed of assignment for the benefit of creditors shall render the deed null and void, and that therefore this deed is void. It is undeniable that a deed made by a citizen of this State for the benefit of creditors in this State, containing such provision for preferences as is contained in the deed under consideration, would be void under section 2014, General Statutes, of this State.

But this deed was made in New York by a citizen of that State, and the laws of that State require that such a provision as the one objected to here shall be included in every assignment for the benefit of creditors. See S. L. New York, 1877, chap. 466; amended S. L., 1884, chap. 328, which declares that "in all assignments, wages, salaries, &c., of employees shall be preferred before any other debt." This deed is valid in New York, and the rule of comity between the States requires it shall be supported here unless inconsistent with our laws and to the injury of our citizens.

We have seen that it is inconsistent with our law in the matter of the preference of the claims of employees. It was executed according to the requirements of our law; and if it was a conveyance and no more, being executed in conformity to our law it would unquestionably pass title, and being anterior to the attachments, the attachments could acquire no lien. It is the condition of the trust that is inconsistent with our law. This, however, is not to be executed here, but in New York, where the creditors are. There is no reason why the rule of comity should be suspended, because its suspension is not necessary to the protection of any citizen of this State. Its suspension is invoked by citizens of New York for protection against the operation of the laws of their own State.

It is said in *Russell* v. *Tunno, Pinckney & Co., supra*, at page 315: "It is quite true, therefore, that if the assignment now in question be inconsistent with the act of 1828, it cannot operate here at all as against a rival creditor, our own citizen," plainly implying that a deed of assignment good in another jurisdiction is valid here also, although some of its trusts are inconsistent with our laws, if these are not to be administered here, and are not injurious to our own citizens. Our assignment law is intended to regulate the administration of the assets of an insolvent debtor whose creditors are citizens of this State and whose property is here. But when the insolvent debtor and his creditors are all citizens of another State, and a deed of assignment is made which is valid there, and the trusts of which are to be administered there, the courts of this State will not avoid the deed as to property here, if the deed is executed according to the requirements of the law of this State.

It is therefore ordered, adjudged, and decreed, that the attachments in each of the above entitled cases be set aside, and the levies under them be vacated.

Plaintiffs appealed.

*Mr. Ira B. Jones*, for appellant

*Messrs. Wylie & Wylie*, contra.

October 23, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On the 15th day of October, 1886, the defendant, Blauvelt, a citizen of the State of New York, executed a general assignment to the petitioner, Dickinson, for the benefit of his creditors, which was duly recorded in the County of Lancaster on the 23rd of October, 1886. This assignment was executed in the State of New York, and provided for the payment of all wages and salaries actually owing to the employees of the assignor in preference of all other debts, which preference is not only allowed but required by the statutes of New York. At the time of the execution of the assignment the principal part of the assignor's property was in the State of New York, though he also owned some property in South Carolina, located in the Counties of Lancaster and Kershaw. Between the 27th of October and the 10th of November, 1886, the plaintiffs, appellants, three of whom are citizens and residents of the State of New York, and the other two of the State of Connecticut, as creditors of Blauvelt, commenced their actions against him in this State, and procured the issue of warrants of attachment, which were levied on a tract of land in the County of Lancaster, known as the Gay Mine, and also upon one cotton gin, one portable steam engine, one saw frame and fixtures, and one log carriage and fixtures found on said land; and also upon a tract of land in Kershaw County, known as the DeKalb factory, including all of Blauvelt's interest in mill, gin, fixtures, &c.

On the 15th day of February, 1887, the said Asa D. Dickinson filed his petitions as above stated, claiming to be the owner of the property in Lancaster County levied on under the attachments, under and by virtue of the deed of assignment above stated, and praying that the same might be adjudged to him, and that "said warrants of attachment be dissolved." On hearing these petitions with the answers thereto, Judge Pressley ordered an issue in each case to determine the question of title. These issues came on for trial before Judge Wallace, who, by consent, heard the same without a jury, and rendered judgment, holding that the cotton gin was a fixture and must therefore be regarded as part of the realty; but that the engine and saw mill were not fixtures and must be regarded as personal property, and that

Blauvelt had no leviable interest in any of the property, the same having passed to his assignee under the deed of assignment before the levy of the attachments, and therefore ordered that the attachments be set aside and the levies under them be vacated.

From this judgment the attaching creditors appeal upon the several grounds set out in the record, assigning errors, which may be stated in general terms as follows : 1st. In holding that the engine and saw mill were not fixtures, and should therefore be regarded as personal property. 2nd. In holding that the deed of assignment, though providing for a preference which would render it void under the law of this State, was valid under the law of the State of New York, and upon principles of comity should be held valid here, in a case like this where none of the parties interested are citizens of this State invoking the protection of our law.

No question as to the propriety of this mode of proceeding, or as to the right of a person not a party to the proceedings in attachment to move to set it aside, was made either in the court below or in the argument here, and we therefore decide nothing as to that. It may be that the fact that in these cases issues were ordered to try the title to the property levied on under the attachments, would be sufficient to distinguish these cases from *Copeland* v. *Piedmont & Arlington Life Insurance Company*, 17 S. C., 116, and *Metts* v. *The same Company, Ibid.*, 120, but as this matter was not discussed or even referred to, either in the court below or in the argument here, we will pass it by without any intimation of opinion either one way or the other.

The fundamental question in these cases is as to the validity of the assignment under which the petitioner claims—whether it is sufficient to pass the title to the property found in this State, and under the jurisdiction of its courts. It is conceded that if this assignment had been executed here, it would have been absolutely void under the provisions of section 2014 of the General Statutes, because of the preferences provided for therein; but it is contended that inasmuch as the assignment was valid under the laws of New York, where it was executed, it must be so regarded here upon principles of comity, especially where the interests of our own citizens are not involved. Upon this ques-

tion there is no little conflict of authority elsewhere, but we have no decision, so far as we are informed, in this State upon the subject. The cases of *West* v. *Tupper*, 1 Bail., 193; *Greene* v. *Mowry*, 2 Id., 163; *Mitchell* v. *Smith*, 3 Strob., 236; and *Russell* v. *Tunno*, 11 Rich., 303, do decide that a valid assignment executed abroad will take precedence over the liens of subsequent attachments taken out in this State and levied upon property here; but none of the assignments under consideration in those cases contained provisions which, under the express statute law of this State, would render them void. The question, therefore, which we are now called upon to decide is an open one in this State.

It seems to us that, upon general principles, the assignment here in question cannot be recognized. The legislature having seen fit to declare, in the most positive and unqualified terms, that "any assignment by an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given to any creditor or creditors of the said debtor by the terms of the said assignment, over any other creditor or creditors" (with certain exceptions not applicable to the present case) "such assignment shall be absolutely null and void, and of no effect whatever," we do not see by what authority a court, called upon to administer the laws of this State, could undertake to declare that an assignment providing for such preferences was good and valid, and give it just as full force and effect as if the legislature had made no such declaration. Surely the courts of this State cannot treat that as valid which the legislature has expressly declared shall be absolutely null and void.

The general rule undoubtedly is, that in regard to all contracts of which the subject matter is personal property, their validity is to be tested by the law of the place where the contract is made. If valid there, they will be sustained everywhere, upon principles of international or inter-State comity. See chap. IX. of *Story Confl. Laws; Burrell on Assignments*, section 302. But to this rule there is a well defined exception, that where the contract is in violation of established public policy of the State whose courts are called upon to enforce the contract, especially if it is in violation of some express statutory enactment of such State, this rule of comity is no longer recognized or acted upon, and in

such case the contract, though valid where made, cannot be enforced in the State in violation of whose laws it was made: for, as is said by Mr. Justice Davis, in *Green* v. *Van Buskirk* (7 Wall., at page 151): "This principle of comity always yields when the laws and policy of the State where the property is located have prescribed a different rule of transfer from that of the State where the owner lives." This doctrine was subsequently recognized and affirmed in the case of *Hervey* v. *R. I. Locomotive Works*, 93 U. S., 664.

It may be that the language used in those cases is too broad, as perhaps authorizing the inference that no transfer of personal property made by the owner in accordance with the laws of the State where he has his domicile will be recognized in another State, unless it is made in the manner prescribed by the laws of the latter State, but such was not the point decided in either of those cases. The real point decided was that a transfer of personal property located in one State, by the owner in the State of his domicile, valid according to the laws of that State, but in violation of the laws of the State where the property was actually located, could not be recognized by the courts of the latter State, and that is the extent to which we go. While, as we have said, there is some conflict of authority upon this subject, our view is sustained by the decisions of courts entitled to high consideration. See *Warner* v. *Jaffray*, 96 N. Y., 248, *S. C.*, 48 Am. Rep., 616; *Pierce* v. *O'Brien*, 129 Mass., 314, *S. C.*, 37 Am. Rep., 360; *Paine* v. *Lester*, 44 Conn., 196, *S. C.*, 26 Am. Rep., 442; *Moore* v. *Church*, 70 Iowa, 208, *S. C.*, 59 Am. Rep., 439; *Stricker* v. *Tinkham*, 35 Ga., 177; *Mason* v. *Stricker*, 37 Ga., 262, besides the two cases above cited from the Supreme Court of the United States.

An examination of the cases which have been and may be cited to sustain a contrary view will show that some of them (as, for example, *Butler* v. *Wendell*, 57 Mich., 62, *S. C.*, 58 Am. Rep., 329) rest upon the theory that the provisions of the assignment act of that State forbidding preferences applies only to assignments made within that State, while others draw a distinction between the rights of resident and non-resident attaching creditors, recognizing the priority of a resident attaching creditor

over an assignment valid by the law of the State where it
was executed but invalid by the law of the State where it is
sought to be enforced, but denying such priority to a non-resi-
dent attaching creditor.    Such a distinction we are not inclined
to recognize ; but, on the contrary, prefer to adopt the language
of Danforth, J., in *Hibernia National Bank* v. *Lacombe* (84 N.
Y., 367, *S. C.*, 38 Am. Rep., 518) : "The plaintiff, as we have
seen, although a foreign creditor, is rightfully in our courts pur-
suing a remedy given by our statutes.    It may enforce the rem-
edy to the same extent and in the same manner and with the
same priority as a citizen. * * * Once properly in court and
accepted as a suitor, neither the law, nor the court administer-
ing the law will admit any distinction between the citizen of its
own State and that of another.    Before the law and in its tribu-
nals there can be no preference of one over the other."

The true rule, as we understand it, is, that while on principles
of comity the transfer or assignment of personal property located
here, made by the owner in accordance with the laws of his dom-
cile, will be recognized here ; yet, in the language of Colt, J., in
*Pierce* v. *O'Brien, supra :* "There is no comity which requires
us to give force to laws of another State which directly conflict
with the laws of our own."    Indeed, some of the cases cited by
respondent, as, for example, *Weider* v. *Maddox* (66 Texas, 372,
*S. C.*, 59 Am. Rep., 617), concede that an assignment of per-
sonal property for the benefit of creditors, made in accordance
with the laws of the debtor's domicile, is good in the State where
the property is actually located, only in the absence of express
enactment of such State to the contrary.    Hence, where, as in
this case, it is sought to set up an assignment directly in conflict
with our express statutory enactment, and containing provisions
which our statute declares shall render it "absolutely null and void
and of no effect whatsoever," we think it clear that no principles
of comity require us to recognize such an assignment, even though
it be in strict conformity with the law of the debtor's domicile.

It is, however, earnestly insisted by respondent that our stat-
ute relates only to domestic assignments—those executed within
the limits of this State ; and that its provisions do not apply to
foreign assignments—those executed outside the limits of this

State; and the case of *Russell* v. *Tunno, supra,* is relied on to support this view. It will be observed, however, that Judge Withers in that case was considering the assignment act of 1828, which relates solely to the administration of assignments, and contains no provision touching their validity. After giving a brief abstract of the provisions of the act, he says: "It seems to us manifestly to contemplate, not the validity of assignments, but the administration of them, a regulation in restraint of assignee as well as agent; and a priority of right among creditors prescribed in an assignment cannot depend upon legislation having such purview only. It nowhere discloses that a non-compliance with any or all of its provisions shall render the assignment itself null and void, in whole or in part, whether such default proceed from agent, assignee, or creditors, some or all." It was, therefore, very properly held in that case that the assignment act of 1828 applied only to domestic assignments.

But the assignment act of 1882 (sections 2014, 2015, and 2016 of the General Statutes) contains very different provisions from those found in the act of 1828. It does not stop with simply regulating the administration of assignments, but it goes on to declare that if *any* assignment shall contain certain provisions, it will thereby be rendered absolutely null and void, and hence the remarks of Judge Withers, above quoted, cannot properly be applied to such an act. Indeed, the language which he uses, and the reasons which he gives for limiting the operation of the act of 1828 to domestic assignments, afford the strongest inference that he would have placed a different construction upon the present act, which is manifestly *not* confined to the mere administration of assignments, but does in express terms relate to their validity also. That case, therefore, affords no support whatever to the view that the present assignment act relates only to domestic assignments; and to place such a construction upon the act would require us to interpolate words into the act which we have no authority to do. The language of the act is, "*any* assignments," &c., and to adopt the construction contended for by respondent it would be necessary for us to interpolate some such words as are found in the Missouri statute, "hereafter made in

this State," or some equivalent words; and this we have no right to do.

We are unable to discover any more reason why the words "any assignment," as used in section 2014, should be confined to assignments executed within this State, than that the words "every agreement," as used in section 2022 of the General Statutes, should be confined to agreements entered into in this State, and yet the provisions of that section were applied to an agreement entered into outside the limits of the State in the case of *Ludden & Bates Southern Music House* v. *Dusenbury*, 27 S. C., 464, and no question was ever even suggested, so far as we know, as to the propriety of such application. There is not a word in either section indicating an intention on the part of the legislature to limit the operation of either of those sections to papers executed in this State, and in the absence of any such indication it is the plain duty of the court to give the words used their natural and ordinary signification. The manifest object of both of these provisions was to prevent fraud, and surely the courts of this State cannot be expected to give force and effect to that which the legislature has practically declared to be a fraud, or to hold that an act, if done by a citizen of this State, is a fraud, but if done by a citizen of another State, is perfectly legal and valid.

The Circuit Judge seems to have been impressed with the view that inasmuch as the deed of assignment was executed in accordance with the laws of this State, so far as signing, sealing, and delivery in the presence of two witnesses were concerned, and that the only conflict with our law was in one of the trusts of the deed, that would not invalidate the assignment here, as the trusts were to be executed in New York and not here. There would be great force in this view if our statute, like those of some of the States, simply declared the preference void, and required the property to be distributed *pro rata* amongst all of the creditors, without regard to any preferences provided for in the deed; for such an act would affect only the administration of the trust, and that might well be left to be governed by the law of the place where the trusts were to be executed. But our act goes much deeper and declares that the assignment itself, containing such a provision, shall be absolutely null and void. It strikes not merely at the

preferences provided for, but at the whole assignment, and therefore we cannot adopt the view taken by the Circuit Judge.

The respondent has, in his argument here, for the first time raised the question whether the appellants, who are not residents of this State, and whose causes of action arose elsewhere, are entitled to the remedy afforded by our attachment laws. This question not having been passed upon or even raised in the Circuit Court, so far as we can discover from the "Case," is not, strictly speaking, properly before us. But inasmuch as the rule is that a judgment appealed from may be affirmed upon other grounds than those upon which it was rested by the Circuit Court, we will not decline to consider the question, though according to proper practice the respondent should have given notice to appellants that he intended to support the judgment below upon the ground that the attaching creditors had no right to the remedy afforded by our attachment laws, and therefore, irrespective of the assignment, the attachments could not bind the property.

There can be no doubt that a non-resident may maintain an ordinary action upon a money demand in the courts of this State, without regard to the place where the cause of action arose; and as an attachment is nothing more than a remedy in aid of an ordinary action, we see no reason why such non-resident may not invoke such remedy just as well as a citizen of this State, unless there is something in the provisions of our attachment law which confines the benefits afforded by it to citizens or residents of this State. But we do not find any such limitation in our attachment act, and, on the contrary, its provisions seem to be broad enough to cover any one who may be entitled to institute an action in the courts of this State.

Under the view which we have taken, the question whether certain of the property attached can be regarded as fixtures will not arise, and has not therefore been considered. According to our view, the assignment under which the petitioner claims is, under the express terms of our statute, absolutely null and void, and cannot have any force or effect whatsoever either to transfer real or personal property.

The judgment of this court is, that the judgment of the Circuit

Court be reversed, and that the petitions in each of the cases
above stated be dismissed.

MR. CHIEF JUSTICE SIMPSON concurred in the result, and
MR. JUSTICE MCGOWAN concurred generally.