### SCHRODER v. TOMPKINS et al.

#### (Circuit Court, D. Indiana.  November 23, 1893.)

#### No. 8,935.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—COMMON LAW AND STATUTORY.
 The Ohio statute relating to assignments for the benefit of creditors merely prescribes the method of enforcing and administering the trust after it is created, and the validity and character of the assignment is to be determined by the common law.  Mayer v. Hellman, 91 U. S. 496, and Johnson v. Sharp, 31 Ohio St. 611, followed.

2. SAME—FOREIGN ASSIGNMENTS—PUBLIC POLICY.
 A voluntary common-law assignment, valid in the state where made, carries title to chattels located in another state, and will be enforced by its courts, if not contrary to its own public policy.

3. SAME—ATTACHING CREDITORS.
 A voluntary common-law general assignment for the benefit of all creditors alike, executed in Ohio by a partnership having its principal business there, conveys title to personal property of the debtors in Indiana, although one of the partners resides in Indiana; and when possession is taken thereunder by the assignee he can hold the property as against subsequent attaching creditors not residents of Indiana.  Woolson v. Pipher, 100 Ind. 306, distinguished.

At Law.  Action by Jacob Schroder, as assignee for the benefit of creditors, against George W. Tompkins and William Sherry, to recover possession of goods of the assignor held by defendants, as sheriffs, under certain writs of attachment.  Judgment for plaintiff.

Jacob Shroder, in pro. per.
Mark E. Forkner and John M. Morris, for defendants.

BAKER, District Judge.  This case is submitted on an agreed statement of facts, pursuant to section 553, Rev. St. Ind. 1881.  It is agreed that the plaintiff is a citizen and resident of the state of Ohio, and that the defendants are citizens and residents of the state of Indiana; that the goods and chattels in controversy are of the

value of $3,600 and upwards; that on and prior to October 4, 1893, Frank Leon and Aaron Metzger were partners doing business under the name and style of Leon & Metzger; that they owned a manufactory of clothing, and dealt therein, and had a jobbing house, and operated the same, in Cincinnati, Ohio, and had a branch retail store respectively in Muncie and New Castle, Ind., under the charge of Frank Leon, as a member of the firm of Leon & Metzger; that Frank Leon at the same time was a citizen and resident of Indiana, and has continued to be so until the present time, and Aaron Metzger at the same time was a citizen of Ohio, residing in Cincinnati, and has continued to be so until the present time; that said firm of Leon & Metzger at and prior to October 4, 1893, owned goods, wares, and merchandise in their business in said jobbing house and factory in Cincinnati, and in their branch stores aforesaid; that, being owners and in possession of said goods, they, both being present in Cincinnati as such partners in said city, did voluntarily execute and deliver to the plaintiff on the 4th day of October, 1893, a deed of general assignment of all their goods, wares, and merchandise, and all their partnership property and assets, which assignment was duly accepted by the plaintiff, who, on the said 4th day of October, 1893, filed said deed in the probate court of Hamilton county, Ohio, wherein the city of Cincinnati is located, and executed a bond conformably to the laws of Ohio for the faithful performance of his trust in the penal sum of $50,000, with surety to the approval of the court; that, pursuant to said assignment, Leon & Metzger surrendered to the plaintiff, on the 4th day of October, 1893, all of said property, of which the plaintiff took possession on the same day, and has remained in possession of all of said property; that the plaintiff has not filed said assignment, or a copy thereof, in the recorder's office in the county where said Leon resides; that at the time of said assignment the store in New Castle was in the possession of Cy. Guyer as agent of Leon & Metzger, who was notified by the plaintiff and Leon & Metzger to hold the same for the assignee, which he did until levied on by the sheriff as hereinafter stated; that the plaintiff, immediately after taking possession of said property, caused the same to be appraised according to the laws of Ohio; that at and long before said assignment Leon & Metzger were indebted to the firm of A. Bacharach & Co., of Philadelphia, Pa., in the sum of $1,095.75, for goods sold and delivered to Leon & Metzger at their store in Muncie for retail therein; that each member of said firm of A. Bacharach & Co. is, and long has been, a citizen and resident of Philadelphia, Pa.; that said deed of assignment provided for the pro rata payment and distribution of the proceeds of said trust property among all the creditors of Leon & Metzger without preference; that after said assignment, and after the assignee had taken possession of said goods thereunder, on the 18th day of October, 1893, and four days after the firm of A. Bacharach & Co. had notice and knowledge of said assignment and of the possession of said goods by the plaintiff as assignee, the said firm, declining to accept under said assignment, brought suit in

the circuit court of Delaware county, Ind., against Leon & Metzger to recover the amount so due them, and as ancillary thereto they procured writs of attachment to issue to the defendants Tompkins and Sherry, as sheriffs of the counties wherein Muncie and New Castle are situated; that said writs were issued, and came to the hands of said sheriffs, respectively, on the 18th day of October, 1893, who, by virtue thereof, on October 21, 1893, levied upon and seized the goods in said branch stores so as aforesaid assigned to and in the possession of the plaintiff, and refuse to surrender them, or any part thereof, to him.

The sole question is whether the plaintiff has acquired a paramount title to the goods in controversy by virtue of the deed of assignment and the possession thereof taken thereunder. The deed of assignment in this case was not executed under the authority of any statute of Ohio relating to the transfer of property by insolvent debtors for the benefit of their creditors. The instrument is a voluntary conveyance executed in conformity with the principles of the common law, which is prevalent in that state. In Mayer v. Hellman, 91 U. S. 496, in speaking of the statute of Ohio on this subject, the court said:

"The statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments. It assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties. It requires them to file statements showing what they have done with the property, and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment. It leaves his after-acquired property liable to his creditors, precisely as though no assignment had been made. The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of statutory provision. The assignment in this case must, therefore, be regarded as though the statute of Ohio to which reference is made had no existence."

In Johnson v. Sharp, 31 Ohio St. 611, in speaking of the legislation of that state on the subject of assignments, the court said:

"Nor is the title of an assignee of such nonresident debtor at all affected by the fact that the probate court of the county in which such assigned property may be located has assumed jurisdiction over the administration of such trust. The validity of such assignments is not, in any case, affected by this legislation, but only the mode of administering them; so that the validity of all such assignments must be determined by the general law in relation thereto; and the administration of those made by nonresident debtors would remain subject to the control of courts of equity."

The deed of assignment in question is a valid conveyance under the common law of Ohio. It conveyed to the plaintiff a good title to all the personal property of the assignors in this state upon his acceptance of the trust and reducing the property into his possession, unless such conveyance conflicts with the positive law or declared public policy of Indiana. The jus gentium recognizes the right of disposition as an essential incident of the ownership of personal property; and wherever such property is located it is

generally agreed that the title to it follows the domicile of its owner. "Mobilia ossibus inhaerent." A conveyance of it, valid according to the lex loci contractus, is ordinarily binding, and effectual to transfer the title to personal property wherever located. Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. 403; Catlin v. Silver-Plate Co., 123 Ind. 477, 24 N. E. 250; Martin v. Potter, 11 Gray, 37; Warner v. Jaffray, 96 N. Y. 248; Green v. Van Buskirk, 7 Wall. 139; Law v. Mills, 18 Pa. St. 185; Story, Confl. Laws, 383, 390.

The principles above stated are applicable only to transfers or assignments of property which rest essentially on contract, and are voluntary in the sense that they are the product of a will acting without legal compulsion. Property in a foreign state that has passed from an assignor to an assignee by a voluntary deed, and not by proceedings in invitum by process of law, is distinguished from like property in the hands of a receiver by operation of law, or by assignment under legal compulsion. Assignments of the latter class are generally held inoperative upon property not situated within the territory over which the laws that make, or compel the debtor to make, them have dominion. Involuntary assignments which are made under foreign insolvent laws have no operation outside of the state under whose laws they were made, while a voluntary assignment is a personal common-law right, possessed by every owner of property, and may operate as well in other states as in the state where it is executed. Rhawn v. Pearce, 110 Ill. 350; Smith's Appeal, 104 Pa. St. 381; Weider v. Maddox, 66 Tex. 372, 1 S. W. 168; Walker v. Whitlock, 9 Fla. 86.

The principle that a voluntary assignment is as operative upon personal property situated in a foreign state as it is upon like property located in the state where it is executed, yields to the positive law or declared public policy of such foreign state. Sheldon v. Blanvelt, (S. C.) 7 S. E. 593. It is claimed that the assignment in question is repugnant to the positive law and declared public policy of this state, as manifested in sections 2662, 2663, Rev. St. Ind. 1881. Section 2662 enacts that "any debtor or debtors in embarrassed or failing circumstances, may make a general assignment of his or their property, in trust for the benefit of all his or their bona fide creditors; and all assignments hereafter made by such person or persons for such purpose, except as provided for in this act, shall be deemed fraudulent and void." Section 2663 enacts that such assignment shall be signed and acknowledged before some person qualified to take the acknowledgment of deeds, and shall, within 10 days, be filed with the recorder of deeds of the county where the assignor resides, whose duty it shall be to record the same as deeds are recorded. It provides in detail what the deed of assignment shall contain, including the oath of the assignor to the schedule of his property. It also requires the assignee to give a bond for the performance of his duties, to file with the clerk of the court an inventory and appraisement of the property, and to report his doings to the court. It is fundamental that statutes have no extraterritorial force or operation. The above sections must therefore be so construed as to embrace

and operate upon deeds of assignment executed in this state. and not elsewhere. This doctrine is firmly established. May v. Bank, 122 Ill. 551, 13 N. E. 806; Juilliard v. May, (Ill. Sup.) 22 N. E. 477; Butler v. Wendell, 57 Mich. 62, 23 N. W. 460; Schuler v. Israel, 27 Fed. 851; Atherton v. Ives, 20 Fed. 894; Halsted v. Straus, 32 Fed. 279; Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. 403.

It therefore follows that the assignment in question will be deemed valid and effectual here, unless its enforcement would conflict with the declared public policy of this state, as manifested by the above statutory provisions. The manifest policy and purpose of our statute is to secure the impartial distribution, among all his creditors, without preference, of all the property of the debtor in embarrassed or failing circumstances. It is intended to enforce the principle of sound morality which finds expression in the maxim that equality is equity. All the other statutory provisions are means for the accomplishment of this salutary principle. The assignment in question and the law of Ohio for the administration of the trust carefully provide for and secure the like purpose. It cannot, therefore, be held that it would conflict with the law or policy of this state to uphold the assignment in question as a valid conveyance of the property in controversy. The deed of assignment, coupled with the possession of the goods taken in pursuance thereof, gave to the assignee a valid title to them as against the claims of subsequent attaching creditors who are nonresidents of this state. Among the numerous cases supporting this doctrine are the following: Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. 403; Frank v. Bobbitt, 155 Mass. 112, 29 N. E. 209; Butler v. Wendell, 57 Mich. 62, 23 N. W. 460; May v. Bank, 122 Ill. 551, 556, 13 N. E. 806; Smith's Appeal, 104 Pa. St. 381; Chaffee v. Bank, 71 Me. 514; Coflin v. Kelling, 83 Ky. 649; Egbert v. Baker, 58 Conn. 319, 20 Atl. 466; Receiver of State Bank v. First Nat. Bank, 34 N. J. Eq. 450; Thurston v. Rosenfield, 42 Mo. 474; Weider v. Maddox, 66 Tex. 372, 1 S. W. 168; Ockerman v. Cross, 54 N. Y. 29; Catlin v. Silver-Plate Co., 123 Ind. 477, 24 N. E. 250.

In Barnett v. Kinney, supra, it is held that an assignment of all his property, made for the benefit of his creditors with preferences, by a citizen of Utah to another citizen of Utah, which is valid by the laws of Utah and valid at the common law, is valid in Idaho against an attaching creditor as to property in Idaho of which the assignee has taken possession, notwithstanding the provisions of the Revised Statutes of Idaho that no assignment by an insolvent debtor otherwise than as therein provided is binding on creditors, and that creditors must share pro rata, without priority or preference. Counsel for the defendants cite and rely on the case of Woolson v. Pipher, 100 Ind. 306, as announcing a contrary doctrine. In this they are in error. In this case—which involved an assignment executed in Ohio—it was held that the voluntary assignment of his goods by a failing debtor for the benefit of his creditors, where the possession of the goods is not delivered to nor taken by the assignee, will not defeat the lien of an attaching creditor, created before the consummation of such assignment

by the delivery of the possession of the goods to the assignee. The court said:

"It is certain, we think, that the mere written assignment of the goods, executed as it was in another state, did not give the appellant [the assignee] any such title to the property as would defeat the liens of attaching creditors of the assignors. Possession of the goods was indispensable to the perfection of appellant's title, and, before the delivery of the possession to him, the lien of the attaching creditors on the goods intervened."

The ground on which the judgment of the court was rested supports the conclusion at which I have arrived.

Counsel also press upon the attention of the court the case of Sheldon v. Blanvelt, (S. C.) 7 S. E. 593. Blanvelt, a citizen of New York, executed a general assignment for the benefit of his creditors, providing for the payment of all wages and salaries of his employes in preference of all other creditors, as required by the statute of New York. The assignment was executed and recorded in all respects as required by the statutes of that state. The principal part of the assignor's property was in New York, though he owned some real and personal property in South Carolina. Before possession of the property in South Carolina had been taken by the assignee, it was seized by virtue of writs of attachment sued out at the instance of creditors residing in New York and Connecticut. A statute of South Carolina provided that any assignment for the benefit of creditors made by an insolvent debtor, containing a preference of one creditor over another, should be absolutely void. It was held that the deed of assignment was void so far as the property located in South Carolina was concerned, and that it was immaterial that none of the attaching creditors resided in that state. If this case is correctly decided,—which may well be doubted, in view of the case of Barnett v. Kinney, supra,— it still yields no support to the defendants' contention, because the assignee had not perfected his title by taking possession of the property, as had been done in the case at bar.

The agreed statement of facts exhibits an assignment, valid by the laws of Ohio, and valid by the common law, and the delivery to and the taking possession of the goods located in this state by the assignee before the proceedings in attachment were begun. The fact that one of the partners resided in this state does not, in my judgment, affect the question. The principal domicile of the business was in Ohio, and the stores in Indiana were mere branches of that business. The assignment was properly made in the state in which the principal domicile of the business was located, and, being valid by the law of the place where made, it must be regarded as valid here. As was said in Frank v. Bobbitt, supra:

"It is not necessary to inquire whether this rests on the comity which prevails between different states and countries, or is a recognition of the general right which every one has to dispose of his property, or to contract concerning it, as he chooses."

It was there said that the only qualification annexed to voluntary assignments made by debtors in another state was that the courts would not sustain them if to do so would be prejudicial

·to. the interests of their own citizens, or opposed to public policy. It is not important to inquire whether or not citizens of this state could wrest the goods in controversy from the possession of the ;assignee by proceedings in attachment. The attaching creditors in the present case were nonresidents of this state. It is firmly ·settled that such creditors do not occupy as favorable a: situation 'as' if they were citizens of this state. On this subject; in the last above cited case, the court said:

· ."As to the claim of the plaintiffs that they should stand as well as if they were citizens of this state, it may be said, in the first place, that the qualifica-tion attached to foreign assignments is in favor of our own citizens as such; and, in the next place, that, the assignment being valid by the law of the place where it is made, and not adverse to the interests of our own citizens, nor opposed to public policy, no cause appears for pronouncing it invalid."

· It follows that there must be judgment for the plaintiff pursuant to the agreement, and it is so ordered.