Pitman, Assignee, *v.* Marquardt & Sons et al.

[No. 2,554. Filed June 16, 1898.]

Evidence.— *Bill of Exceptions.*— Where the longhand manuscript contains both oral and documentary evidence, and each item of documentary evidence shown to have been introduced is copied into the bill of exceptions immediately following the statement of its introduction, and the trial judge certifies that the bill contains all the evidence given in the cause, it is a sufficient showing that the bill of exceptions contains all the evidence, although the longhand manuscript by the statement and certificate of the official shorthand reporter purports to contain only a transcript of the shorthand report of the evidence. *pp. 435, 436.*

Court Reporter.—*Appointment.—Presumption.*—Where the record shows that the shorthand reporter was sworn to report the case, and it does not appear whether she was appointed on the court's own motion, or was employed by the parties, or either of them, and no objection to the reporter seems to have been made, it will be presumed on appeal that the action of the court was regular. *p. 436.*

Assignment for Benefit of Creditors.—*Assignments by Nonresidents.*—Under the Kentucky statute, section 75, providing that a deed of assignment shall vest in the assignee the title to all the estate real and personal belonging to the assignor, the title of the assignee in the property assigned is not affected by the failure of the assignor to file a schedule of the property within five days as provided by statute. *pp. 436-438.*

Same.—*Failure to File Inventory.— Assignments by Nonresidents.—*

The failure of an assignee to file an inventory within fifteen days after his appointment of all the estate that came into his hands as provided by the Kentucky statute, section 81, will not devest his title or right of possession as trustee to the property of the trust. *pp. 438, 439.*

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Assignments by Nonresidents.—Possession of Property.—Attachment.*—Where there is no provision in the law of the place where the assignment is made requiring anything but the deed of assignment to vest the title of the property assigned in the assignee, and this being by the law expressly declared sufficient, the possession of the property by the assignee, under the deed, was sufficient to protect him against a subsequent attachment. *pp. 438, 439.*

SAME.—*Assignments by Nonresidents.— Possession.— Attachment.*— Where an assignee in Kentucky, who was empowered by the deed of assignment to employ attorneys to assist in the settlement of the trust, sent his attorney to Indiana to take possession of a branch store belonging to the assignor, and the attorney arrived there the next day after the execution of the deed of assignment, and took possession of the stock of goods and caused the deed of assignment to be recorded in the county in which the property was situated, and then left the stock in the possession of the former manager of the store, and posted a notice on the door stating that an assignment had been made, there was possession of the goods by assignee sufficient as against an attachment creditor who had notice of the assignment, although the attorney was employed prior to the execution of the deed of assignment, but did not take possession of the goods until after the execution thereof. *pp. 439-442.*

SAME.—*Assignments by Nonresidents.—Conflict of Laws.*—An attachment creditor can not question the legality of an assignment made in Kentucky of property in Indiana, on the principle of conflict of laws, for the reason that the Indiana laws allow preference of creditors to be made in good faith, while the Kentucky laws do not, as the provision of the Kentucky law is in favor of the general creditor. *pp. 442-444.*

SAME.—*Assignments by Nonresidents.—Conflict of Laws.—Amount of Exemption.*—A voluntary assignment made in another state, and valid under its laws, cannot be attacked in this State, by an attachment creditor of property situated in this State included in the trust, on the ground that the amount of exemption provided by the laws of the sister state is greater than that provided by the laws of this State. *pp. 444-447.*

SAME.—*Assignments by Nonresidents.*— An assignment made in accordance with the law of the state where it is made affecting

property in this State will be upheld where it is not contrary to the law or policy of this State.   *pp. 447.*

From the Jackson Circuit Court.   *Reversed.*

*Oscar H. Montgomery,* for appellant.

*Jason B. Brown,* for appellees.

BLACK, J.—The appellant, as assignee of George C. Freeman, sued the appellees, Ewing Stilwell, sheriff of Jackson county, and G. W. Marquardt & Sons, a corporation of Chicago, Illinois, for the recovery of possession of a certain stock of goods and damages for the detention thereof. There was an answer in denial, and a trial by the court resulted in a finding for the appellees, in accordance with which judgment was rendered.

The overruling of the appellant's motion for a new trial is assigned as error, and it is contended that the finding was not supported by sufficient evidence. The complaint showed, in substance, that said Freeman, being a resident of Montgomery county, Kentucky, and insolvent, owning the stock of goods in question situated at Seymour, Jackson county, Indiana, on the 16th day of September, 1896, made a general assignment of all his property, for the benefit of all his *bona fide* creditors, to the appellant, and in that behalf duly executed an indenture of assignment in writing, a copy of which was exhibited with the complaint, in all things in accordance with the laws of Kentucky, a copy of said laws also being exhibited with the complaint; that on the same day the appellant accepted the trust and executed his bond with sureties, which was thereupon approved by the county judge of said county, duly qualified and entered upon the discharge of his duties as such assignee, and caused said indenture to be recorded in the office of the clerk of said

Montgomery county, where the assignor then resided, and where the business in respect of which the same was made was carried on, and also in each other county wherein real estate conveyed is situated, and on the 17th of September, 1896, caused a copy of the same to be recorded in the office of the recorder of Jackson county, Indiana; that on the 21st day of September, 1896, on account of the sickness of said assignor, the county court of said Montgomery county, on proper application, duly entered an order of record in said court extending for thirty days the time for said assignor to file a schedule under oath setting forth the general nature and full value of the estate assigned, together with a list of his creditors, and on the 7th of October, 1896, said assignor filed said schedule duly verified by his oath; that on the 17th of September, 1896, the assignee took possession of said personal property in Jackson county, Indiana, so assigned to him, located at a place described in the city of Seymour, in charge of one E. G. Kay, of the value of $1,200; that the appellant as such assignee made an inventory of said property, and filed the same in the clerk's office of the county court within fifteen days thereafter and reported the same to the county court of said Montgomery county, and obtained an order from said court for the sale of said property either at public or private sale, in his discretion; that said estate was still pending in said court and unsettled.

It was alleged that the appellant was the owner in his trust capacity of said property, and entitled to the possession thereof; but on the 22d day of September, 1896, the appellees having actual notice and knowledge of said assignment, wrongfully seized and took said property from the appellant, under and by virtue of a writ of attachment sued out by said corporation

in the court below, in an action against said assignor, and the appellees still wrongfully and unlawfully detained said property from the appellant in said Jackson county, to his damage in the sum of $500; that the appellee Stilwell was sheriff of said Jackson county and as such had the custody of said property for said corporation. Prayer for judgment for the possession of said property and for $500 for the detention thereof.

The learned counsel for appellees argued before us quite forcibly against the consideration by us of the evidence set forth in a bill of exceptions, insisting that it does not sufficiently show that it contains all the evidence given in the cause. It appears in the bill of exceptions that the evidence was reported by a shorthand reporter spoken of therein as the official shorthand reporter of the court. It is contended that while the bill shows on its face that much documentary evidence was given in the cause, it purports to contain the evidence taken down in shorthand by the official reporter, and does not state that it contains the documentary evidence. In the formal expressions employed by the reporter her report is spoken of as an original longhand manuscript of the evidence taken and reported by her in shorthand, and in her certificate she refers to her report to which the certificate is appended as a longhand transcript of her shorthand report of the evidence, and states that it contains all the evidence given in the cause. Each item of documentary evidence shown to have been introduced is copied into the bill immediately following the statement of its introduction, and is thus made a part of the reporter's longhand transcript and of the bill of exceptions. The judge certifies that this longhand manuscript contains all the evidence given in the cause. While the longhand manuscript of the evidence thus formally purports to be a transcript of the

shorthand report of the evidence, it appears that a part of the evidence was oral and a part documentary, but it is manifest what part was oral and what part was documentary.

The settling of a bill of exceptions is a judicial act. The judge in his judicial capacity having declared that the bill contains all the evidence given in the cause, the objection that the items of documentary evidence were copied into the stenographer's longhand report of the evidence and the entire report denominated by the reporter and the judge as a longhand manuscript of the reporter's shorthand report, is so merely technical a criticism that to allow it would be contrary to sufficiently manifest truth.

Some question is made in argument as to the validity of the statute relating to official shorthand reporters, but it is an immaterial matter in this case, for there sufficiently appears to have been a compliance with the act of 1873 relating to shorthand reporters. In the record it is stated: "This cause is now called for trial, and Miss Bessie Burrell is sworn to report the case."

No objection to the reporter appears to have been made. It does not appear whether she was appointed on the court's own motion or was employed by the parties or either of them, or that the oath was administered upon a motion of a party. In the absence of any showing upon the subject, we will not presume that the action of the court was not regular.

It appears from the evidence that the assignee through his authorized agent took possession of the goods at Seymour on the 17th of September, 1896, and while he still, through his servant, held possession, the property was seized on the 22d day of the same month, under the writ of attachment issued on that day.

Pitman, Assignee, v. Marquardt & Sons et al.

The statute of Kentucky introduced in evidence provided, amongst other things, for the acknowledgement of the deed by the assignor, and for the recording thereof in the county clerk's office, and that "the deed shall vest in the assignee the title to all the estate, real and personal, with all the deeds, books and papers relating thereto belonging to the assignor at the time of making the assignment," etc. Ky. St., section 75. The statute also provided: "The assignor within five days from the day upon which the deed of assignment is lodged for record, shall file in the county where the assignee qualifies, to be recorded therein, a schedule under oath setting forth the general nature and full value of the estate assigned, together with a list of his creditors," etc.

The evidence showed that the deed was executed and acknowledged by the assignor, and accepted by the assignee, and filed in the clerk's office, on the 16th of September, 1896. On the next day the assignee, before the county court, qualified, offering his bond, which was then approved by the court, and taking the oaths required by law. On the 21st of September, 1896, the assignor was by said court given until the 30th of the same month to file his schedule, and the assignee was ordered by said court to proceed at once to sell the stock of merchandise assigned to him by said assignor, located at Seymour, Indiana. The assignor filed his schedule on the 7th of October, 1896.

It is contended on behalf of the appellees that the assignment was ineffectual to vest title in the assignee until the assignor filed his schedule. With this view we are unable to agree. The statute provided that the deed of assignment should vest the title in the assignee, and it would seem reasonable to conclude that when the deed had been executed by the assignor and accepted by the assignee and had been duly recorded

and the assignee had duly qualified as such and he had taken possession of the personal property assigned, his title as trustee could not be affected by mere delay of the assignor in filing his schedule, whether the delay were previously authorized by order of the court or not. The filing of the schedule was a part of the needful proceedings in the settlement of the trust estate after the title thereto had passed from the assignor to the assignee to be administered under the supervision of the court.

The statute elsewhere provides means for enforcing disclosure by the assignor of information concerning the estate and claims against it, and it cannot reasonably be thought that any mere default on his part after the making of the assignment shall operate to deprive the creditors whose interests are represented by the assignee of the benefit contemplated by the statute.

By one of the provisions of the statute it was made the duty of the assignee to file in the clerk's office of the county court, "as soon as may be, and within fifteen days after his qualification, unless the court allows longer time, an inventory verified by him of all the estate that came to his hands." Ky. St., section 81.

On the 8th of February, 1897, the appellant filed in said court a supplemental report and inventory taken by him by his duly authorized attorney E. K. S. Clinkerbeard, in Seymour, Indiana, on September 17, 1896, which inventory does not appear to have been verified. It seems to have been thought by counsel for the appellees that because of the delay in filing this inventory beyond the period mentioned in the statute, and the fact that it was not verified, the assignment had not taken place when the writ of attachment issued. Ample provision appears in the statute also for enforcing the performance of the as-

signee's duties therein prescribed. It was provided that he could be required, upon reasonable notice, to file such reports as might be ordered. His delay in filing any report or inventory, or any defect in the report or inventory, even one for which the report or inventory might have been rejected, or one which he might have been required to correct, could not devest his title or right of possession as trustee to the property of the trust. The statute of Kentucky did not provide that failure of the assignor or the assignee to perform such prescribed duties after the making of the assignment should render it invalid. There being nothing in the law of the place of the contract requiring anything but the deed in order to vest title, and this being by that law expressly declared sufficient, we are of the opinion that at least nothing but the assignee's possession under the deed was needed after the execution of the deed, to protect him against subsequent attachment. See *Appeal of Howland* (N. H.), 35 Atl. 943.

It is also urged on behalf of the appellees, that under the facts of the case as shown by the evidence, the appellant cannot be regarded as having taken possession of the property in question before the writ of attachment was levied upon it.

Among the provisions of the deed of assignment was one that the trustee had full power to employ attorneys to assist in the settlement of the trust, and that the assignee "hereby employs E. K. S. Clinkerbeard." The assignor resided in Montgomery county, Kentucky, where his principal business was located, the store at Seymour being a branch establishment in charge of a Mr. Kay. The assignee did not himself come to Indiana until after the goods had been taken by the appellees. He employed said Clinkerbeard, who was a lawyer, and sent him to Seymour on the

17th of September, 1896, to take charge of the goods. He was directed by the assignee to come in his interest. He took possession of the goods through Clinkerbeard, who arrived at Seymour on the day last mentioned. He went to file notice of assignment and to take charge of the goods then in the charge of Kay. He delivered the deed of assignment to the deputy sheriff of Jackson county at Seymour, and requested him to notify Mr. Kay of the assignment, which the deputy did; and then, at the request of Clinkerbeard, the deputy went to Brownstown, the county seat, and filed the deed of assignment. Immediately after the notice to Kay, Clinkerbeard assumed charge of the business, receiving the keys of the store, and took an inventory of the stock, except certain goods belonging to said Chicago corporation which were there on consignment. He afterward delivered this inventory to the appellant. After the inventory was completed Clinkerbeard employed said Kay to guard the property in the absence of the former, until he or the assignee could return and assume charge. The business was suspended and the doors were closed, and a notice of the cause was put on the door with the address of the assignee. Clinkerbeard performed this service at the instance and request of the assignee.

One William B. Tompkins, a resident of Chicago and an employe of said corporation, its confidential man with power of attorney, also went to Seymour on the 17th of September, 1896. He met Clinkerbeard there and told him the business he was on, which the evidence indicates to have been to obtain a mortgage from said Freeman. Tompkins, at the store, when Clinkerbeard was there, read the deed of assignment and Clinkerbeard's power of attorney. Tompkins displayed his power of attorney to Clinkerbeard, who allowed the former as the representative of the corpora-

tion to remove all goods in the store on consignment, and Tompkins received from Clinkerbeard certain goods sent on consignment from the corporation. This was on the 17th or 18th, "probably the 19th" of September, 1896, as Tompkins testified. After removing these goods, Tompkins helped Clinkerbeard in completing the inventory, that he might depart on a train that afternoon, which was the 18th of September, 1896, as Clinkerbeard testified.

At the time he helped to make the inventory, he was informed that Mr. Freeman had made an assignment to Mr. Pitman, and he saw the deed of assignment and a power of attorney from the assignee to Clinkerbeard. After the departure of Clinkerbeard, Tompkins remained in Seymour, and the attachment proceeding was commenced at his instance, the writ being issued and served on the 22nd of September, 1896. He accompanied the sheriff and assisted in taking the goods. When they went to take the goods, the store was closed, and there was a notice posted on the door stating that the store was closed and that Freeman had assigned to Pitman. The sheriff obtained the keys from Mr. Kay, and took the goods in charge and had since kept them in the county.

It is thus plainly shown by the evidence that the assignee took possession through his agent and was holding the goods by his servant when the writ of attachment was issued. That the assignee might take and hold the goods through a servant cannot be questioned. It is claimed that the attorney who took possession for the assignee had been employed before the assignee had qualified as such, and therefore had no sufficient authority. The possession was taken after the execution and acknowledgement of the deed and on the day on which the assignee qualified. Whenever the appointment was made the employment con-

tinued after the assignee had qualified. At the time of the issuing of the writ some days afterward, the assignee manifestly was relying upon the acts of his servants in his behalf. He was then holding the goods through Kay. The assignee could not have denied responsibility as such for the acts of these servants. The attaching creditor had full knowledge of the assignment and of the fact that the goods were not held by Kay for the assignor, but were in his charge for the assignee, from whom Tompkins accepted surrender of goods not covered by the assignment. We think the possession of the assignee was sufficiently shown.

Finally, it is contended that the assignment having been made in Kentucky under the laws of that state, is fraudulent and void in respect to the property situated in Indiana. In *Woolson* v. *Pipher*, 100 Ind. 306, to which reference is made by appellees, and by which we are bound, it was held that a voluntary assignment for the benefit of creditors made in Ohio could not defeat the lien of attaching creditors upon goods in this State, where the writ of attachment was in the hands of the sheriff before possession of the goods had been obtained by the assignee. In *Union Savings, etc., Co.* v. *Indianapolis Lounge Co., ante,* 325, this court had occasion to point out that there is no statute of our State prescribing the duties of a foreign assignee to whom has been assigned personal property situated in this State, and it was held by us that a voluntary assignment for the benefit of creditors made in another state and perfected in accordance with the law thereof, so as to pass the title to the assignor's property in that State, will also pass title to his personal property situated in this State, though as to tangible personal property so situated, the assignee's actual possession thereof must be acquired in order to vest title in him as

against an attaching creditor. We also held in that case that in the final taking possession by the assignee no stricter rule applies than in the case of ordinary purchase.

It is contended that to uphold this Kentucky assignment would be contrary to the policy and statutory law of Indiana. In this connection it is said by counsel that our law allows preference of creditors made in good faith,—that a debtor in failing and embarrassed circumstances may, in contemplation of making an assignment, prefer some of his creditors to the exclusion of others,—while by the statute of Kentucky in evidence it is provided that if the assignor, before making the deed, shall have made any preferential or fraudulent transfer, conveyance or gift of any of his property, or a fraudulent purchase of any property in the name of another, "the property so fraudulently transferred, conveyed or purchased shall vest in the assignee," and it shall be his duty to institute proceedings to recover it, etc. Ky. St., section 84. Without discussing the question as to the difference between the law of this State and that of Kentucky here stated, it may be said that if no preferences are permissible in Kentucky, such as are allowable in Indiana, the difference would seem to be in the interest and for the benefit of the creditors in general, and not one of which the appellees could be heard to complain.

In the deed of assignment the assignor reserved to himself and family a homestead and all exemptions under the laws of Kentucky. The statute of that state in evidence excepts from the property which shall pass by the deed of assignment the property exempt by law unless embraced in the deed, and provides that if the assignor reserves any property under the exemption laws, the court shall, by methods prescribed by the statute, cause it to be set apart to the

debtor; and that if a homestead is claimed, the court may, by consent of the assignee, and if it appears to be for the interest of the creditors, or if the land is not divisible without impairing its value, direct the property to be sold and the value of the homestead, not exceeding $1,000, to be paid to the assignor.

It is contended that the exemption laws of Kentucky are opposed to the policy of this State, which exempts to the debtor property not exceeding in value $600.00. It does not appear in this case otherwise than as above stated what are the exemption laws of Kentucky. Nor does it appear that in fact the appellant's assignor actually received or would receive any homestead or an exemption of property of any definite value, or what exemption he will in fact receive.

Our statute concerning voluntary assignments for the benefit of creditors relates only to assignments made in this State, and has no reference to assignments made in other states. It was said in *Catlin* v. *Wilcox, etc., Co.*, 123 Ind. 477, that it is well settled that personal property is transferable according to the law of the owner's domicil, and that a voluntary assignment or transfer, made without compulsion or legal coercion, is to be governed everywhere by that law, unless the contract by which the transfer was made is limited or restrained by some policy or positive enactment of the state in which the property is situate, or unless it affects citizens of the latter state injuriously. In *Weider* v. *Maddox*, 66 Tex. 372, 1 S. W. 168, it was said: "It seems, however, to be everywhere admitted that a general voluntary assignment, for the benefit of creditors, made by an insolvent debtor, in accordance with the laws of the place of his domicil, will pass all his personal property wherever situated, unless the operation of such assignments is

limited or restrained by some law of the state in which the property is situated." In *Atherton* v. *Ives*, 20 Fed. 894, it was said, that the right of a state to regulate the transfer of property within its jurisdiction, must be exercised by the state, and the intention clearly expressed in a statute, or by the settled policy of the state; otherwise, a transfer of personal property, good and valid in the domicil of the owner, will be held good and valid in another state. See, also, *Baltimore, etc., R. R. Co.* v. *Glenn*, 28 Md. 287. In *Bentley* v. *Whittemore*, 19 N. J. Eq. 462, it was held that a voluntary assignment made by a debtor, the assignor and assignee being residents of New York, and the assignment being valid by the laws of New York, could not be impeached in New Jersey with regard to property there situated, in behalf of creditors, residents of New York or New Hampshire or Rhode Island, on the ground that the assignment was incompatible with the statutes of New Jersey, the incompatibility in question relating to the creation of preferences. The court said: "The true rule of law and public policy is this: that a voluntary assignment made abroad, inconsistent, in substantial respects, with our statute, should not be put in execution here to the detriment of our citizens, but that, for all other purposes, if valid by the *lex loci*, it should be carried fully into effect. It is highly desirable that the judicial determinations in the several states should be in harmony on this important subject, and it would certainly seem, from present indications, that the rule above propounded will be the one most likely to receive general approbation." In *Barnett* v. *Kinney*, 147 U. S. 476, it was held that an assignment of all his property for the benefit of creditors, with preferences, by a citizen of Utah to another citizen of Utah, valid by the laws of Utah and at common law was valid in Idaho

against an attaching creditor, a resident of Minnesota, as to personal property in Idaho of which the assignee had taken possession, notwithstanding the provision of the statute of Idaho that no assignment by an insolvent debtor otherwise than as therein provided should be binding on creditors, and the creditors must share *pro rata*, without priority or preferences. See, also, *Williams* v. *Kemper, etc., Co.*, 4 Okl. 145, 43 Pac. 1148; *Livermore* v. *Jenckes*, 21 How. (U. S.) 126; *Schroder* v. *Tompkins*, 58 Fed. 672. In *Weider* v. *Maddox, supra*, it was held that a voluntary assignment made in Missouri was not invalidated as to property situated in Texas by the fact that the assignment made the kind of property and its value which was reserved from the operation of the deed to depend upon the laws of Missouri regulating exemptions. It was said: "Exemption laws have application to persons resident in the state in which they exist, and when an assignment conveys property in that and another state, it would seem that the exemption should be measured by the law of the domicil."

We have not been referred to any case in which it has been decided that a voluntary assignment made in one state and valid under its laws may be attacked in another state on the ground that the amount of exemption provided by the laws of the former is greater than that provided by the laws of the latter.

Such an exemption under a foreign assignment is not in contravention of any statutory provision in this State; nor can we be considered as deciding contrary to the policy of our State, which under its laws provides for exemption of property from execution against its resident householders, if we should recognize and uphold the title of an assignee in possession of goods in this State under a valid voluntary assignment made in Kentucky, as against a subsequently

issued writ of attachment sued out by an Illinois creditor of the assignor, because the sister state by its laws also allows such exemption, though in other and greater amount than would here be allowed one of our resident householders under our laws, and the foreign debtor has in his own state claimed his lawful exemption.

Basing our decision upon the facts of the case before us, we do not mean to be understood as concluding that the result should be different if the attaching creditor were a citizen of this State. We are of the opinion that the assignment should be upheld because it is in accordance with the law of the state where made, and not contrary to the law or policy of this State. The finding was not supported by sufficient evidence. Judgment reversed.